JASON M. WILEY, ESQ.
Nevada Bar No. 009274
DANIEL S. CEREGHINO, ESQ.
Nevada Bar No. 011534
**KOLESAR & LEATHAM**
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada  89145
Telephone:  (702) 362-7800
Facsimile:  (702) 362-9472
E-Mail:     jwiley@klnevada.com
                 amaurice@klnevada.com

*Attorneys for Nonparty*
*Val de Loire, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| NML CAPITAL LTD., | CASE NO. |
| Plaintiff, | **NONPARTY VAL DE LOIRE, LLC'S MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER** |
| vs. | |
| THE REPUBLIC OF ARGENTINA, | |
| Defendant. | |

**NONPARTY VAL DE LOIRE LLC'S MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER**

Pursuant to Fed.R.Civ.P. 45(d)(3), nonparty Val de Loire, LLC ("VDL"), by and through its counsel of record, the law firm Kolesar & Leatham, hereby files Nonparty Val de Loire, LLC's Motion to Quash Subpoena or, in the Alternative, for Protective Order ("Motion").

/ / /

/ / /

/ / /

1

The Motion is made and based upon the Federal Rules of Civil Procedure, the points and authorities herein, the declaration of Patricia Amunategui and the declaration of Edmund Ward filed concurrently herewith, and any argument requested by the Court.

DATED this 24th day of September, 2014.

KOLESAR & LEATHAM

By /s/ Jason M. Wiley
JASON M. WILEY, ESQ.
Nevada Bar No. 009274
DANIEL S. CEREGHINO, ESQ.
Nevada Bar No. 011534
400 South Rampart Boulevard
Suite 400
Las Vegas, Nevada 89145

*Attorneys for Nonparty*
*Val de Loire, LLC*

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY..............................2

III.    LEGAL ARGUMENT AND ANALYSIS ...........................................................3

      A.      THE SUBPOENA MUST BE QUASHED  ..........................................3

            1.      This is the proper district for VDL's Motion to Quash ............................3

            2.      NML has no grounds for issuing the subpoena to VDL ............................3

            3.      NML's subpoena violates Rule 45............................................................13

IV.     CONCLUSION.....................................................................................................17

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

# TABLE OF AUTHORITIES

**CASES**                                                                             **PAGE**

*Convolve, Inc. v. Dell, Inc.,*
  2011 WL 1766486 (N.D.Cal.) ........................................................................16

*EM Ltd. v. Republic of Argentina,*
  695 F.3d 201 (2d Cir. 2012) *cert. granted,* 134 S. Ct. 895 (U.S. 2014,
  *Aff'd sub nom. Republic of Argentina v. NML Capital, Ltd.,*
  134 S. Ct. 2250, 189 L. Ed. 2d 234 (U.S. 2014)..............................................3

*In re NCAA Student-Athlete Name & Likeness Licensing Litigation,*
  Nos. 09-cv-01967 CW (NC), 11-mc-80020 CW (NC, 2012 WL 4846522 (N.D.Cal.).....16

*Lt Int'l Ltd. v. Shuffle Master, Inc.,*
  2:12-CV-1216-JAD-GWF, 2014 WL 3734270 (D. Nev. July 29, 2014) .........................14

*Matthias Jans & Associates, Ltd. v. Dropic,*
  No. 01-MC026, 2001 WL 1661473 (W.D.Mich. 2001) ....................................14

*NML Capital, Ltd. v. Republic of Argentina,*
  C 12-80185 JSW MEJ, 2013 WL 655211 (N.D.Ca. 2013) ..........................1, 3, in passim

*Nordotek Environmental, Inc. v. RDP Technologies, Inc.,*
  No. MC410-024, 2010 WL 3070196 (S.D. Ga. August 5, 2010).....................................14

*Premium Service Corp. v. Sperry & Hutchinson Co.,*
  511 F.2d 225 (9th Cir. 1975) .......................................................................16

*Price Waterhouse LLP v. First American Corp. ("First American IV"),*
  182 F.R.D. 56 (S.D.N.Y. 1988) ....................................................................14

*Regents of Univ. of Cal. v. Kohne,*
  166 F.R.D. 463 (S.D.Cal. 1996) ................................................................13, 14

*Relational, LLC v. Hodges,*
  627 F.3d 668 (7th Cir. 2010) ......................................................................14

*Ryan Inv. Corp. v. Pedregal de Cabo San Lucas,*
  C 06-3219 JWRS, 2009 WL 5114077 (N.D.Cal. Dec. 18, 2009 ........................4

*Wultz v. Bank of China, Ltd.,*
  298 F.R.D. 91 (S.D.N.Y. 2014) ...................................................................14

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

ii

# TABLE OF AUTHORITIES (CONT'D.)

## **STATUTES**

Fed.R.Civ.P. 30(b)(6)..................................................................................2, 14

Fed.R.Civ.P. 45........................................................................1, 2, in passim

Fed.R.Civ.P. 45(c)(3)(A)..........................................................................2, 14

Fed.R.Civ.P. 45(d)(3)....................................................................................3

Fed.R.Civ.P. 69........................................................................1, 4, in passim

Fed.R.Civ.P. 69(a)........................................................................................5

Fed.R.Civ.P. 69(a)(2)..................................................................................1, 4

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

# I.

## INTRODUCTION

NML's dispute with the Republic of Argentina, and more to the point, NML's pursuit of Argentina's assets throughout the world, are now well known as regular features in major news programs and publications. NML's efforts recently brought it to Nevada, where it initially pursued information and documents from many other Nevada entities.[1] *See NML Capital, Ltd. v. The Republic of Argentina*, Case No. 2:14-cv-00492-RFB-VCF. NML continues, however, to ever widen the cast of its net and is now attempting to ensnare nonparty VDL.

In evaluating VDL's Motion to Quash, this Court must engage in a two-step, sequential analysis of Fed.R.Civ.P. 45 and Fed.R.Civ.P. 69. *See* Fed.R.Civ.P. 69(a)(2) ("[T]he judgment creditor … may obtain discovery from any person … *as provided in these rules* ..."). First, the Court must examine the propriety of the discovery requests in NML's Subpoena subject to Rule 69, which governs the appropriate scope of discovery in aid of execution. *Id.* When it comes to nonparties like VDL, this discovery is restricted and can only be expanded on sufficient evidence by the requesting party. *See NML Capital, Ltd. v. Republic of Argentina*, C 12-80185 JSW MEJ, 2013 WL 655211 (N.D.Cal. 2013). If the Court determines that NML has not made a sufficient showing to support its expansive requests, then the analysis is over and the subpoena should be quashed. If the Court, however, determines that NML has made a sufficient showing to support its expansive requests, then the Court should proceed to evaluate the subpoena's compliance with Rule 45, which governs the means of obtaining that discovery from nonparties. *See* Fed.R.Civ.P. 45.

As set forth in further detail below, this Court must quash NML's subpoena to VDL for three (3) reasons:

(1) NML has failed to make a sufficient showing that VDL has any connection to Argentina as judgment debtor, or NML's judgment against Argentina, and, therefore, does not have an appropriate basis under Rule 69 for the wide-ranging subpoena;

---

[1] Those proceedings against the collectively referenced "123 Entities" are currently before the District Judge on the 123 Entities' Objection to the presiding Magistrate Judge's order granting NML's Motion to Compel.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

1

(2) NML has failed to comply with Rule 45's geographic restrictions because the subpoena commands a VDL employee or agent, none of whom live, work, or regularly transact business in Nevada or within 100 miles of this Court, to travel thousands of miles and appear in Las Vegas for deposition; and

(3) NML has failed to comply with Rule 45's prohibition against imposing undue burden and expense on subpoena recipients with its kitchen sink document requests that seek the disclosure of privileged or otherwise confidential and protected information.

As such, the subpoena must be quashed.

## II.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

1.      NML CAPITAL, LTD. ("NML") holds judgments and claims totaling nearly $3 billion dollars against the REPUBLIC OF ARGENTINA ("Argentina") issued by the United States District Court Southern District of New York.  *See* Subpoena Duces Tecum Ad Testificandum ("Subpoena") issued to Val de Loire, LLC, a true and correct copy of which is appended hereto and labeled as Exhibit "A".

**THE SUBPOENA**

2.      On August 27, 2014, NML served the Subpoena on VDL through VDL's registered agent, MF Corporate Services (Nevada) Limited.  *See* Exhibit A.

3.      The Subpoena requests production of certain categories of documents set forth in the Subpoena and, pursuant to Fed.R.Civ.P. 30(b)(6) and Fed.R.Civ.P. 45, deposition testimony by a VDL-designated representative.  *See* Exhibit A.

4.      The Subpoena sets Las Vegas, Nevada as the place for compliance with subpoena. *See* Exhibit A.

5.      The Subpoena also sets forth the provisions of Fed.R.Civ.P. 45(c)(3)(A) which, in pertinent part, provides an issuing court must quash or modify a subpoena that:

/ / /

/ / /

/ / /

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

| | |
|---|---|
| (ii) | requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person; |
| (iv) | subjects a person to undue burden. |

*See* Exhibit A.

### III.

### LEGAL ARGUMENT AND ANALYSIS

**A.    THE SUBPOENA MUST BE QUASHED**

**    *1.    This is the proper district for VDL's Motion to Quash***

Fed.R.Civ.P. 45(d)(3) provides in pertinent part: "… the court for the district *where compliance is required* must quash …" *Id.* (emphasis added).  In this case, though the subpoena was issued by the Southern District of New York, compliance is required in this district.  *See* Exhibit A ("commanded … to produce [in] Las Vegas … Plaintiff will take [VDL's] deposition … in Las Vegas").

**    *2.    NML has no grounds for issuing the subpoena to VDL***

Given the "Background Information" attached to the subject subpoena (and consistent with its arguments in numerous other post-judgment discovery disputes), NML will likely argue that Fed.R.Civ.P. 69 affords it great latitude in issuing subpoenas that it believes further its interests as a valid judgment creditor.[2]   *See NML Capital, Ltd.*, 2013 WL 655211[3]; *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) *cert. granted*, 134 S. Ct. 895, 187 L. Ed. 2d 701 (U.S. 2014) and *aff'd sub nom. Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 189 L. Ed. 2d 234 (U.S. 2014).  On closer analysis, however, this argument fails.

/ / /

/ / /

---

[2] VDL offers no opinion on and does not dispute the validity of NML's judgments against Argentina.  VDL simply denies any connection to Argentina and any knowledge of any information that may assist NML in the execution of its judgments.

[3] Mr. Hranitzky appears to serve as counsel for NML in all of its Rule 69-related litigation, regardless of jurisdiction.  He is identified as counsel in *NML Capital, Ltd.*, 2013 WL 655211 (N.D. Ca.) as well as *NML Capital, Ltd. v. The Republic of Argentina*, Case No. 2:14-cv-00492-RFB-VCF in this jurisdiction.  Mr. Hranitzky also signed the VDL subpoena at issue in this dispute.  *See* Exhibit A.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

a.   <u>*NML has not met its burden under Fed.R.Civ.P. 69 for the issuance of this*</u>
<u>*subpoena.*</u>

Fed.R.Civ.P. 69(a)(2) provides in pertinent part:  "[T]he judgment creditor … may obtain discovery from any person … as provided in these rules or by the procedure of the state where the court is located."  *Id.*  This provides a generally broad scope of available discovery.  *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, C 06-3219 JWRS, 2009 WL 5114077 (N.D. Cal. Dec. 18, 2009).  But that scope is not limitless.  "[D]isclosure concerning the assets of a non-party is generally not contemplated by Rule 69(a)."  *NML Capital, Ltd.*, 2013 WL 655211, *2.  Rather, "such discovery should only be permitted when 'the relationship between the <u>*judgment debtor*</u> and the non-party is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them'."  *Id.*  As to Rule 69 itself, then, there are two inquiries the Court should make as to the subject subpoena: (1) whether the subpoena is narrowly tailored towards information about the judgment debtor and, if not, whether the subpoena seeks information about the nonparty itself (or other unrelated nonparties); and (2) the basis for expanding the scope of the subpoena.  In this instance, NML has exceeded the acceptable scope of a Rule 69 subpoena without a reasonable basis for doing so. Therefore, the Subpoena should be quashed.

First, the Subpoena exceeds the acceptable scope of Rule 69 discovery in seeking only financial information of numerous nonparties.[4]  The Subpoena does not seek <u>*any*</u> information pertaining to VDL's transaction history with the judgment debtor, Argentina.  *See* Exhibit A. Because it seeks only the private and financial affairs of numerous nonparties, the Subpoena is inappropriate and should be quashed.  *See NML Capital, Ltd.*, 2013 WL 655211, *2.

Second, NML has provided no basis for seeking VDL's or any other nonparty's own information.  Rule 69 provides a mechanism for a judgment creditor to inquire, both of the judgment debtor itself and of nonparties, <u>*about the judgment debtor's assets*</u>.  Fed.R.Civ.P. 69; *see also NML Capital, Ltd.*, 2013 WL 655211, *2.

---

[4] Besides Rule 69, the subpoena runs afoul of Rule 45.  *See infra*.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

4

1   NML would *not*, at this point, be permitted to inquire into any other unrelated nonparty's

2   private and financial affairs.  *NML Capital, Ltd.*, 2013 WL 655211, 2 ("disclosure concerning the

3   assets of a non-party is generally not contemplated by Rule 69(a)").  The only way NML could

4   expand the scope of its subpoena to include the private and financial affairs of nonparties

5   (meaning those persons and entities other than the judgment debtor and the alter ego, if any), is

6   after sufficiently demonstrating some nefarious activities by and between those other nonparties

7   and the judgment debtor and/or alter ego.  *Id.* (nonparty disclosures are only permitted when

8   there is "reasonable doubt about the bona fides of the transfer of assets between [the nonparty

9   and the judgment debtor or its alter ego].").

10   This process was fully played out in a previous *NML Capital* matter.  That case, decided

11   close to eighteen (18) months before NML issued the Subpoena to VDL, involved NML's

12   subpoenas to Chevron and three other nonparties in enforcement of the same judgments against

13   Argentina.  *NML Capital, Ltd.*, 2013 WL 655211 at *1.  Those subpoenas defined Argentina to

14   include various nonparty government instrumentalities, including an entity known as "YPF."  *Id.*

15   NML sought Chevron's financial dealings with YPF on the theory that YPF was an alter ego of

16   Argentina due to a recent transaction directly between YPF and Argentina.  *Id.* at *2.  The court

17   rejected NML's arguments: "When the ground for the discovery is an alleged alter ego

18   relationship with the judgment debtor, there must be facts before the Court to show the basis for

19   the allegation."  *Id.* at *1.  "The facts advanced by NML consist of general allegations[.]

20   Majority ownership, appointment of directors, and control of a board's membership are all

21   insufficient to overcome the presumption of separateness[.]"  The court did not permit NML to

22   expand the scope of post-judgment discovery to include prying into nonparties' financial affairs

23   with yet another nonparty.  *Id.* at *1.

24   As to the Subpoena in the present matter, there is not a single request regarding the actual

25   judgment debtor – Argentina.  On that level alone, it is improper and should be quashed.  *See*

26   Fed.R.Civ.P. 69; *see also NML Capital, Ltd.*, 2013 WL 655211, *2.  The Subpoena also does not

27   withstand Rule 69 scrutiny because it does not claim a direct relationship between VDL and

28   Argentina, and it does not claim that a single transaction of VDL's lacks bona fides, let alone any

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

5

transaction between VDL and Argentina or any alter ego thereto. *See* Exhibit A, "Background Information." NML's Subpoena, therefore, does not even satisfy the preliminary inquiry under Rule 69. It certainly does not withstand scrutiny under the more nuanced alter ego / reasonable doubt standards.

NML has offered zero evidence linking VDL to the actual judgment debtor, or any alter ego of the judgment debtor. Instead, NML offers only its "Background Information" attachment, which overflows with unsupported, conclusory allegations, including:

- *"[NML] seeks information regarding companies affiliated with an Argentine national who owns a residence in the United States named Cristobal Lopez ("Lopez")" and "among these companies is an entity called Val de Loire, LLC."*[5]

Notwithstanding the "Background Information" section of the Subpoena (Attachment A thereto), NML fails to provide any support that Lopez is linked or affiliated with VDL. As discussed in greater detail, *infra*, NML wrongly, and in bad faith, relies upon a supposed "supplemental criminal complaint filed in Argentina against Nestor Kirchner" that alleges VDL is a 35% owner of Correon SA, an entity that "partners" with Lopez's company Casino Club SA. Even if that unsupported allegation evidenced an "affiliation" with Lopez, that affiliation would pertain only to two nonparties and non-judgment debtors and, therefore, have no evidentiary value with respect to possible improper transactions involving the actual judgment debtor, Argentina. As such, nothing about this unsupported allegation passes Rule 69 muster and warrants prying into VDL's affairs. *See NML Capital, Ltd.*, 2013 WL 655211, *2.

- *"NML has reason to <u>believe</u> that an illicit relationship between Lopez, current Argentine President Cristina Fernandez de Kirchner, and her late husband Nestor Kirchner <u>may</u> have allowed Lopez to abscond with millions of dollars in Argentine state assets – which are now hidden around the world."*[6]

NML's use of the word "may" is telling. None of the articles or documents cited in the Subpoena provide for a relationship between the Kirchners and Lopez. Nor do any of the articles or documents provide any inkling that Lopez has absconded with any Argentine assets. NML

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

---

[5] *See* Exhibit A.

[6] *Id.* (emphasis added).

has already subpoenaed numerous entities and will apparently continue to issue subpoenas to any and every individual or entity whose name pops up on a Google search for "Argentina" and "Kirchner."  Nothing about this unsupported allegation supports prying into VDL's affairs.  *See NML Capital, Ltd.*, 2013 WL 655211, *2.

- "Documents produced to NML by MF Corporate Services (Nevada) Ltd. ("MF Nevada") reveal that the Lopez-linked Nevada entity Val de Loire at least periodically does business with some of the 123 shell corporations linked to [Lazaro] Baez."[7]

NML provides no evidence that Lopez is affiliated with VDL.  A subsequent allegation provides that VDL may have entered into a lone agreement with Balmont Holdings, LLC, a Nevada limited liability company to which NML has previously issued a subpoena for documents.  Even taken in the light most favorable to NML, however, this "fact," taken out of its proper context, is of no help to NML in satisfying Rule 69.  Nothing about this unsupported allegation supports NML's use of Fed.R.Civ.P. 69 to try and pry into VDL's affairs.  *See NML Capital, Ltd.*, 2013 WL 655211, *2.

- *"Lopez has also been tied to Nevada shell company called Centenary International Corp."*[8]

NML's reference to Centenary International Corp. ("Centenary") is confusing.  True, Centenary is a Nevada corporation whose mission is to develop an energy business, with a primary focus in oil and gas exploration.  Yes, Lopez appears to own a 24% interest in Centenary.  That company, however, is *not* under investigation nor has previously been accused of any wrongdoing.  *See* Exhibit A, at n. 4.  That company also has no connection to VDL.  *Id.*  It also has no apparent connection to Argentina as judgment debtor.  *Id.*  Any attempt to draw a nefarious connection between Argentina and VDL via Centenary or any entity affiliated with Centenary is a dead end.  Nothing about this unsupported allegation supports NML's use of Fed.R.Civ.P. 69 to try and pry into VDL's affairs.  *See NML Capital, Ltd.*, 2013 WL 655211, *2.

---

[7] *Id.*

[8] *Id.*

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

7

- *"[T]he accusations targeting Lopez center on his improper and potentially illegal acquisition of lucrative hydrocarbon and gambling concessions.*[9]

Again, there has been no showing that VDL and Lopez are affiliated in any way.  More problematic, NML now asserts that Lopez's – not VDL's – *potential* (meaning, unsubstantiated) improper acquisition of government contracts somehow opens the door also to a subpoena to VDL, an unrelated entity.  NML's position is plain wrong.  This hodge podge of unrelated facts does not entitle NML to kick in VDL's doors and rummage through its private and financial affairs (or use VDL as a conduit to do the same to other uninterested nonparties).  Nothing about this unsupported allegation supports NML's use of Fed.R.Civ.P. 69 to try and pry into VDL's affairs.  *See NML Capital, Ltd.*, 2013 WL 655211, *2.

- *"Val de Loire is a holding company that is also named in a 2010 supplemental criminal complaint filed in Argentina against Nestor Kirchner."*[10]

In support of this allegation, NML references "*Id.*" (*see* Subpoena (Exhibit A), "Background Information," at n. 5) which in the legal citation context refers to the immediately preceding cited authority.  In this case, the immediately preceding cited authority is the Form 10-K for Centenary.  *Id.* at n. 4.  That form expressly provides that Centenary is *not* named in any criminal complaints or investigations.  *See* Exhibit A, "Background Information," at n. 4.  The form does not refer to VDL.  *Id.*  If Centenary is the supposed link between VDL and Argentina,[11] the omission of any reference whatsoever to VDL ends the Rule 69 analysis and confirms NML had no reasonable basis for issuing the Subpoena in the first place.  *See NML Capital, Ltd.*, 2013 WL 655211, *2.  NML has failed to produce one shred of evidence of any tie between VDL and Argentina, the actual judgment debtor.  Nothing about this unsupported allegation supports NML's use of Fed.R.Civ.P. 69 to try and pry into VDL's affairs.  *See NML Capital, Ltd.*, 2013 WL 655211, *2.

---

[9] *Id.*

[10] *Id.*

[11] It is difficult to follow exactly what NML is saying about who through the disjointed "Background Information" attachment to the Subpoena.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

- *"Val de Loire is a 35% owner of Correon SA, an entity that partners with Lopez's company Casino Club SA in gambling projects that have been tainted by widespread allegations of political corruption."*[12]

Hyperbole aside, NML supports this allegation by again directing VDL to the Centenary Form 10-K which, as noted above, does *not* include mention of VDL.[13]   This allegation, therefore, does not suffice for Rule 69 purposes.   Evaluating the actual information in the allegation (which gives it more credit than it is due), simply confirms there is at most an indirect relationship between VDL and Lopez, not Argentina.   All NML can show via this allegation is that VDL has an interest in a second company, that that second company partners with a third company, and that that third company is affiliated with Lopez.   Moreover, there is nothing in this allegation that demonstrates that this particular partnering, or any aspect of the chain of entities, facilitated any malfeasance with respect to Argentine assets.   Nothing about this unsupported allegation supports NML's use of Fed.R.Civ.P. 69 to try and pry into VDL's affairs.   *See NML Capital, Ltd.*, 2013 WL 655211, *2.

- *"Correon SA is also identified in US Securities & Exchange Commission records as an investor-partner of the Lopez-controlled vehicle Casino Club S.A."*[14]

NML fails to provide any valid support for this allegation.   The cited URL returns only an error message.   Again, regardless of whatever the actual connection between Lopez and these other entities (Correon and Casino Club), which NML has also not demonstrated, NML has offered nothing showing any connection to VDL.   Nothing about this unsupported allegation supports NML's use of Fed.R.Civ.P. 69 to try and pry into VDL's affairs.   *See NML Capital, Ltd.*, 2013 WL 655211, *2.

/ / /

/ / /

/ / /

---

[12] *See* Exhibit A.

[13] It also does not mention Correon SA, or Casino Club SA.

[14] *Id.*

9

- *"Documents produced to NML under a separate subpoena have linked Val de Loire to the formation of Fintech Holdings and Balmont Holdings."*[15]

NML provides no support for this bald, conclusory allegation.  In short, this does not support NML's misuse of Rule 69 in this instance.  *See NML Capital, Ltd.*, 2013 WL 655211, *2.

- *"Argentine judge Rodolfo Canicoba Corral opened a formal investigation into two of Lopez's casino operations for tax evasion, defrauding the government, and colluding with public officials to violate the requirements of their positions."*[16]

This is another prime example that NML is simply engaged in a grand fishing expedition. Assuming the allegations set forth are true (which is quite the stretch), the formal *investigation* – there has been no actual conviction or indictment – centers on Lopez's *casino operations*. Neither of the documents cited in support of this allegation mentions VDL or shows any affiliation between VDL and Lopez or any Lopez-controlled casino operation.  Nothing about this unsupported allegation supports NML's misuse of Fed.R.Civ.P. 69 in subpoenaing VDL. *See NML Capital, Ltd.*, 2013 WL 655211, *2.

- *"Documents produced to NML by MF Nevada further reflect connections between Lopez and Baez."*[17]

As per usual, NML has declined to produce any evidence in support of this statement. More to the point, however, this statement is irrelevant.  For purposes germane to the instant proceeding, NML has provided nothing showing a relationship between VDL and NML's judgment debtor (Argentina),[18] let alone raising a reasonable suspicion regarding the bona fides of transfers of funds between VDL and Argentina.[19]  Nothing about this unsupported allegation

---

[15] *Id.*

[16] *Id.* at n.8.1 and n.8.2.

[17] *See* Exhibit A.

[18] On information and belief, NML holds no valid judgments against Baez, Lopez, Correon, Casino Club, Centenary, Balmont Holdings, Fintech Holdings, Mossack Fonseca & Co., MF Nevada, or any other individual or entity referenced in the Subpoena's Attachment C.

[19] Moreover, NML cites to a number of documents in Spanish without providing VDL or this Court with translations.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

supports NML's misuse of Fed.R.Civ.P. 69 in subpoenaing VDL.  *See NML Capital, Ltd.*, 2013 WL 655211, *2.

- *"[T]he Panamanian law firm Mossack Fonseca & Co. appears to represent either Val de Loire itself or the individuals and entities behind it."*[20]

Again, use of the word "appears" is telling as NML provides no support that Mossack Fonseca represents VDL.  Mossack Fonseca's purported involvement in the alleged absconding of Argentine funds is a common theme and allegation throughout NML's legal actions against Nevada entities but to date, despite multiple opportunities in NML's two pending Nevada actions,[21] NML has provided no support of any nefarious actions by the law firm or any of its employees, agents, or representatives.  Mossack Fonseca simply offers its clients incorporation and organization services and contracted with MF Nevada as an arm's-length independent contractor to assist in the formation of Nevada entities.  Moreover, the relevance of this "fact" is lost on VDL and, as is customary, unexplained by NML.  In short, this collateral attack on Mossack Fonseca is unsubstantiated and, more importantly, does not support NML's misuse of Rule 69 in this instance.  *See NML Capital, Ltd.*, 2013 WL 655211, *2.

- *"To cite just one example, MF Nevada produced to NML a letter from Patricia Amunategui of MF Nevada, to the Uruguayan law firm of Juan Pedro Damiani, which appears to have represented the beneficial owner of the Baez Entity Balmont Holdings."*[22]

This purely speculative allegation warrants no further comment.  Suffice it to say, this allegation offers no evidence of any connection between VDL and Argentina or of any purported wrongdoing.  Nothing about this unsupported allegation supports NML's misuse of Fed.R.Civ.P. 69 in subpoenaing VDL.  *See NML Capital, Ltd.*, 2013 WL 655211, *2.

/ / /

/ / /

/ / /

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

---

[20] *See* Exhibit A.

[21] These include the above-captioned case and *NML Capital, Ltd. v. The Republic of Argentina*, Case No. 2:14-cv-00492-RFB-VCF.

11

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

- *"In the letter, Amunategui refers to a number of documents that were enclosed with the correspondence, including one that reads [o]riginals of the mutual contracts with the assignment of collateral signed by Mr. Edmund Ward, one of which carries the corresponding certificate of the resident agent and the apostil, and by Val de Loire."*[23]

This allegation fails to provide any details regarding the nature of and parties to the referenced contracts or the nature of the referenced collateral.   It also fails to provide any explanation of this letter's or its contents' relevance.   These are material omissions.   Nothing about this unsupported allegation supports NML's misuse of Fed.R.Civ.P. 69 in subpoenaing VDL.   *See NML Capital, Ltd.*, 2013 WL 655211, *2.

- *"[N]evertheless, the document indicates that one of [sic] firms in the Baez networks had business dealings with a firm that forms a significant part of Lopez's empire."*[24]

Again, NML resorts to pure conjecture.   There has been no showing that Baez controlled or was otherwise affiliated with any of the previously subpoenaed entities.   Moreover, NML has not provided the Court with the correspondence from the MF Nevada representative as alleged in the Subpoena.   Even in the light most favorable for NML, however, the correspondence – if true – evidences nothing more than a lone transaction between Balmont Holdings and VDL, neither of which are parties and neither of which are the pertinent judgment debtor (Argentina) or alter egos thereof.   Nothing about this unsupported allegation supports NML's misuse of Fed.R.Civ.P. 69 in subpoenaing VDL.   *See NML Capital, Ltd.*, 2013 WL 655211, *2.

These types of conclusory allegations were insufficient in the case of Chevron's dealings with an Argentinian government instrumentality with undisputed direct transactions with Argentina.   As such, they certainly cannot support the kind of unfettered, unrelated discovery NML seeks in this instance.   *Id.*   In short, NML must offer up some other evidence in order to justify its use of Rule 69 to try and pry into VDL's affairs because what it has offered to date is

---

[22] *See* Exhibit A.

[23] *Id.*

[24] *Id.*

nothing but innuendo and conjecture.  If it cannot, this Court should grant VDL's Motion and quash the subpoena.  *Id.*

> i.   *NML's subpoena exceeds the limited scope of Rule 69 discovery as it relates to nonparties.*

As noted above (p. 6 ll. 17-21), besides failing to connect the subpoenaed party (VDL) to the actual judgment debtor (Argentina), the Subpoena is defective under Rule 69 because it seeks nothing related to the judgment debtor.  It is clear that NML included the definition "Argentina" to mask its inquiry into nonparties as one involving the judgment debtor.  However, only one (1) of the sixteen (16) requests uses that term.  In stark contrast, fifteen (15) of the sixteen (16) requests are directed at the private and financial affairs of "the Persons identified in Attachment C."  None of those persons is Argentina.  All of those "Persons" (17 individuals and 6 entities) are nonparties and there is no disputing that point.  VDL is also a nonparty and there is no disputing that point.

"[D]isclosure concerning the assets of a non-party is generally not contemplated by Rule 69(a)."  *NML Capital, Ltd.*, 2013 WL 655211, *2.  This is a simple statement of the law.  NML simply cannot *directly* inquire about the private and financial affairs of any of the "Persons" in Attachment C.  *Id.*  Inserting VDL into the equation does not change the ultimate fact that the subpoena seeks nonparty financial information and, therefore, is inappropriate.  *Id.*  This Court should not permit such an easy end-run around this limitation by allowing NML to obtain the same protected information via an *indirect* request through VDL.  *See id.*

> **3.   NML's subpoena violates Rule 45.**
>
> > a.   Rule 45 is strictly construed.

The Rule 69 analysis does not this Court's consideration of VDL's Motion.  If NML satisfies this Court as to Rule 69, the Court must then evaluate the Subpoena for compliance with Rule 45's various mandatory safeguards for subpoena recipients.  *See* Exhibit A (in particular NML's multiple citations to Rule 45 and attachment of the protective provisions of Rule 45).  In doing so, this Court must strictly enforce those Rule 45 restrictions and safeguards.  *See Regents of Univ. of Cal. v. Kohne*, 166 F.R.D. 463, 464 (S.D.Cal. 1996) ("[t]he language of Rule

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

45(c)(3)(A) should be read *literally*" (emphasis added)); *Matthias Jans & Associates, Ltd. v. Dropic*, No. 01-MC026, 2001 WL 1661473 at *2 (W.D.Mich 2001) ([Rule 45] contains "*mandatory* safeguards" for subpoena recipients; *LT Int'l Ltd. v. Shuffle Master, Inc.*, 2:12-CV-1216-JAD-GWF, 2014 WL 3734270 (D. Nev. July 29, 2014) (indicating that every aspect of Rule 45 is to be strictly and literally construed).

b.   <u>The Motion to Quash should be granted.</u>

i.   *NML's subpoena requires VDL to travel thousands of miles beyond Rule 45's geographical limitations.*

NML's subpoena commands VDL to send a 30(b)(6) corporate designee to appear for deposition in Las Vegas, Nevada.  *See* Exhibit A.  VDL, however, does not have a single employee, authorized agent, or representative who resides, works, or regularly transacts business in Nevada or within 100 miles of this Court.  *See* Ward Declaration.  Rather, every employee of VDL resides, works, and only ever regularly transacts business in Argentina.  *Id.*  As such, no VDL employee can be compelled to testify in Nevada.  *See e.g., Price Waterhouse LLP v. First American Corp.* ("*First American IV*"), 182 F.R.D. 56, 62-63 (S.D.N.Y. 1998) ("no authority … has held that a … court has the power to compel a nonparty witness residing overseas to attend a deposition in the United States ..."); *Wultz v. Bank of China, Ltd.*, 298 F.R.D. 91, 98 (S.D.N.Y. 2014) ("Because Rule 45's geographical restriction applies to Rule 30(b)(6) testimony, the Court ***cannot*** compel anyone to travel from Jerusalem to New York."  (Emphasis added.)); *Matthias Jans & Associates, Ltd. v. Dropic*, No. 01-MC026, 2001 WL 1661473 at *2 (W.D.Mich 2001) ("[The Federal Rules] contain mandatory safeguards … including a requirement that nonparties not be forced to travel more than 100 miles"); *Relational, LLC v. Hodges*, 627 F.3d 668, 673 (7th Cir.2010) (holding that the court cannot order a nonparty foreign resident to appear at a court proceeding since foreign nationals are beyond the court's subpoena power**);** *Nordotek Environmental, Inc. v. RDP Technologies, Inc.*, No. MC410-024, 2010 WL 3070196, at *1 (S.D. Ga. August 5, 2010) (holding there is no "critical witness" exception based on Fed.R.Civ.P. 45's plain language); *Regents of Univ. of Cal. v. Kohne*, 166 F.R.D. 463, 464 (S.D.Cal. 1996) ("[t]he language of Rule 45(c)(3)(A) should be read *literally*" (emphasis added)).

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

14

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

As the *Dropic* court succinctly stated: "A subpoena *must* be quashed or modified if it purports to require a nonparty to travel to a place more than 100 miles from his or her residence or employment." *Id.* at *2 (emphasis in original).  That is exactly the case here and, therefore, the subpoena to VDL must be quashed with respect to the commanded deposition.[25]

> ii.    *NML's document requests subject VDL to undue burden in violation of Rule 45.*

NML's subpoena also commands VDL to produce documents in response to sixteen (16) categories.  Because the subpoena never should have issued in the first place based on the lack of a Rule 69 reasonable basis, **_any_** efforts required of VDL with respect to it would be considered undue.  *See Polo Bldg Group, Inc. v. Rakita (In re Shubov)*, 253 B.R. 540, 547 (B.A.P. 9th Cir. 2002) ("When a subpoena should not have been issued, **_literally everything_** done in response to it constitutes 'undue burden or expense' within the meaning of [Rule 45]."  (Emphasis added.)).  Only by quashing the Subpoena can this Court avoid undue burden being imposed on VDL.

Notwithstanding that threshold question regarding whether the Subpoena should have issued at all, an analysis of NML's actual requests confirms the unreasonable and undue burden imposed on VDL.

- 15 of the 16 requests are more appropriately viewed as having 23 discrete subparts each.  Requests 1 – 12 and 14 – 16 make the generalized reference to "the Persons identified in Attachment C."  That attachment identifies 23 discrete "Persons," including 17 individuals and 6 entities.  The total number of requests to VDL, therefore, comes to 346.

- 15 of the 16 requests seek documents more appropriately obtained from individuals or entities more directly connected to the alleged embezzlement scheme.

---

[25] There is no possibility for modification based on the location of all of VDL's employees thousands of miles from **_any_** U.S. court.

- Every single request lacks any reasonable limitations as to time. The purported embezzlement scheme transpired over a definitive time period, yet NML asks for documents regardless of that relevant time period.

- Requests 1 and 3 lack any reasonable limitations as to subject matter.

- Requests 4, 5, and 7 present absurdities. They request documents regarding the "beneficial ownership," "organizational structure," and "registration, re-registration, incorporation, reincorporation, transfer in control, dissolution or termination" of individuals, all of which are absurd impossibilities.

In *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975), the Court of Appeals affirmed the District Court's decision to quash the subject subpoena. The Court of appeals said:

> [The subpoena's] requests for documents were sweeping in nature, covering every paper touching on any relationship between [the recipient, the defendant, and the defendant's director in his personal capacity]. Compliance would have required extensive sifting and analysis by [the subpoena recipient's] employees. [The subpoena issuer's] offer to do the sifting itself was unrealistic, as the court recognized; no company, having a choice, would permit another company to go on a fishing expedition through its records.

In this instance, NML is one step further removed than the issuing party in the *Sperry & Hutchinson Co.* case as it is not even seeking information directly pertaining to its defendant/judgment debtor, Argentina. Requiring VDL to respond to such a large number of overly-expansive requests pertaining to such a large number of discrete "Persons" with no seeming connection to or stake in the underlying litigation between NML and Argentina would be unduly burdensome on VDL. *Id.*; *see Convolve, Inc. v. Dell, Inc.*, 2011 WL 1766486, *2 (N.D.Cal.); *see also In re NCAA Student–Athlete Name & Likeness Licensing Litigation*, Nos. 09-cv-01967 CW (NC), 11-mc-80020 CW (NC, 2012 WL 4846522 (N.D.Cal.) ("The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts.").

The motion should be granted and the subpoena quashed.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

16

      *iii.*  *The subpoena's document requests are also objectionable on other grounds.*

VDL also objects to numerous other aspects of the subpoena's document requests, including, but not limited to, the 16 specific categories.  VDL's general objections include:

- VDL objects to the "Background Information" document in its entirety, but in particular all general allegations regarding VDL's connections to either Lopez, Baez, or any other person or entity purportedly involved in the alleged (and as yet unproven) embezzlement scheme on hearsay, foundation, and relevance grounds.

- VDL objects to Instructions 1, 5, and 10 as being overbroad in demanding duplicative productions.

- VDL objects to Instructions 1, 4, 5, and 10, and Requests 1, 2, 5 – 7, 11, 13, and 15 as seeking the production of attorney-client privileged and/or work-product protected documents.

**IV.**

**CONCLUSION**

  Aggressive pursuit of one's judgment debtor is fine, perhaps even laudable.  Running roughshod over the rules of civil procedure and attempting to bully uninterested nonparties, however, is plain wrong.  Rules 45 and 69 each provide this Court with independent bases for quashing this Subpoena in its entirety and VDL respectfully requests this Court do so.

  DATED this 24th day of September, 2014.

          **KOLESAR & LEATHAM**

       By */s/ Jason M. Wiley*_____
         JASON M. WILEY, ESQ.
         Nevada Bar No. 009274
         DANIEL S. CEREGHINO, ESQ.
         Nevada Bar No. 011534
         400 South Rampart Boulevard
         Suite 400
         Las Vegas, Nevada 89145

         *Attorneys for Nonparty*
         *Val de Loire, LLC*

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472