KIRK B. LENHARD, ESQ., Nevada Bar No. 1437
NIKKI L. BAKER, ESQ., Nevada Bar No. 6562
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Telephone:  702.382.2101
Facsimile:  702.382.8135
Email:  klenhard@bhfs.com
Email:  nbaker@bhfs.com

*Attorneys for NML Capital Ltd.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NML CAPITAL LTD., | CASE NO.:  2:14-cv-01573-LDG-PAL |
| Plaintiff, | **NML CAPITAL, LTD.'S MEMORANDUM IN RESPONSE TO NONPARTY VAL DE LOIRE LLC'S MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER; AND IN SUPPORT OF NML'S CROSS MOTION TO COMPEL** |
| v. | |
| THE REPUBLIC OF ARGENTINA, | |
| Defendant. | |

Plaintiff NML Capital, Ltd., by and through its attorneys of record Brownstein Hyatt Farber Schreck, LLP and Dechert LLP, hereby responds to Non-party Val de Loire LLC's ("**Val de Loire**") Motion to Quash Subpoena or, in the Alternative, for Protective Order (the "**Motion**") and moves to compel Val de Loire to comply fully with the subpoena NML served on it on August 27, 2014 (the "**Subpoena**").

. . .

. . .

. . .

. . .

. . .

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1

## **TABLE OF CONTENTS**

2

**Page**

3  TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT .................................................................................. 1

4  STATEMENT OF FACTS AND PROCEDURAL HISTORY ...................................... 4

5  I.      THE ALLEGED EMBEZZLEMENT SCHEME. .............................................. 4

6          A.      Cristobal López ................................................................................... 4

7          B.      Lázaro Baéz ......................................................................................... 5

           C.      Val de Loire's Connections To López, Baéz, And The Baéz Entities ... 6

8  II.     THE SUBPOENA AND VAL DE LOIRE'S REFUSAL TO MEET AND
9          CONFER IN GOOD FAITH. ........................................................................ 8

   ARGUMENT ............................................................................................................. 8

10 I.      NML IS ENTITLED TO DISCOVER INFORMATION THAT MAY LEAD TO
           MISAPPROPRIATED ASSETS EMBEZZLED FROM ARGENTINA AND
11         SUBJECT TO EXECUTION IN SATISFACTION OF NML'S JUDGMENTS,
           VAL DE LOIRE'S MOTION SHOULD BE DENIED. ....................................... 9

12
           A.      This Court Has Broad Discretion Under Rule 69(a)(2) To Permit Third-
13                 Party Discovery That May Reveal The Identity and Location Of Potentially
                   Attachable Assets. ............................................................................... 9

14
           B.      Post-judgment Discovery Is Warranted As Long As The Judgment Creditor
15                 Can Make A Threshold Showing That Connects The Third-Party With
                   Discoverable Information. .................................................................. 10

16         C.      NML Seeks Information That Is Relevant To Its Ongoing Post-Judgment
                   Execution Efforts. .............................................................................. 11

17                 1.      Suspected embezzlement of Argentine property by Cristobal López. ...... 11

18                 2.      Val de Loire is a shell company affiliated with López. ........................... 12

19                 3.      Val de Loire and López are both linked to Lázaro Baéz. ......................... 12

                   4.      NML is Entitled to Discovery to Investigate Any Property That
20                         May Have Been Embezzled by López, Baéz, or shell entities like
                           Val de Loire. .................................................................................... 13

21         D.      Val de Loire Argues For a Strict Standard For Third-Party Discovery  That
22                 Is Not Contemplated By The Federal Rules of Civil Procedure. .......................... 14

           E.      Producing Responsive Documents Would Not Impose Any Undue Burden
23                 On Val de Loire. .................................................................................. 16

24         F.      Any Concerns By Val de Loire Concerning The Need To Protect
                   Privileged Or Confidential Information Can Be Addressed With An
25                 Appropriate Confidentiality Agreement And The Use Of A Privilege Log. ........ 17

   II.     THIS COURT HAS THE AUTHORITY TO ORDER VAL DE LOIRE TO
26         IDENTIFY AND DESIGNATE INDIVIDUALS WITHIN THE COURT'S
           JURISDICTION TO APPEAR FOR A DEPOSITION OR EDUCATE A
27         WITNESS TO APPEAR. ............................................................................ 17

28 CONCLUSION ......................................................................................................... 20

*BROWNSTEIN HYATT FARBER SCHRECK, LLP*
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1

## TABLE OF AUTHORITIES

2

CASES

3

4

*1st Tech., LLC v. Rational Enter. LTDA,*
   2:06-cv-01110-RLH-GWF, 2007 WL 5596692 (D. Nev. Nov. 13, 2007) ............................ 10

5

*Alamo Rent-A-Car, Inc. v. Mendenhall,*
   937 P.2d 69 (Nev. 1997) .................................................................................................. 13

6

7

*Couturier v. Am. Invsco Corp.,*
   No. 2:12-cv-01104-APG-NJK, 2013 WL 4499008 (D. Nev. Aug. 20, 2013) ...................... 19

8

*Dexia Credit Local v. Rogan,*
   629 F.3d 612 (7th Cir. 2010) ............................................................................................ 20

9

10

*Diamond State Ins. Co. v. Rebel Oil. Co., Inc.,*
   157 F.R.D. 691 (D. Nev. 1994) ......................................................................................... 16

11

12

*Eitzen Bulk A/S v. Bank of India,*
   827 F. Supp. 234 (S.D.N.Y. 2011) .................................................................................... 10

13

*EM Ltd. v. Republic of Argentina,*
   720 F. Supp. 2d 273 (S.D.N.Y. 2010), *vacated on other grounds,* 652 F.3d 172 (2d
   Cir. 2011) ................................................................................................................ 1, 9, 10

14

15

*First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba,*
   462 U.S. 611 (1983) ........................................................................................................ 15

16

17

*Great Am. Ins. Co. of N.Y. v. Vegas Const. Co., Inc.,*
   251 F.R.D. 534 (D. Nev. 2008) ............................................................................. 17, 18, 19

18

19

*Henry v. Rizzolo,*
   No. 2:08-cv-00635-PMP-GWF 2012 WL 13725 (D. Nev. Jan. 4, 2012) ............................ 10

20

*Illinois Bell Tel. Co., Inc. v. Global NAPs Illinois, Inc.,*
   551 F.3d 587 (7th Cir. 2008) ............................................................................................ 14

21

22

*Less v. Taber Instrument Corp.,*
   53 F.R.D. 645 (W.D.N.Y. 1971) ....................................................................................... 19

23

*LT Int'l Ltd. v. Shuffle Master, Inc.,*
   2:12-CV-1216-JAD-GWF, 2014 WL 3734270 (D. Nev. July 29, 2014) ............................. 20

24

25

*Matthias Jans & Associates, Ltd. v. Dropic,*
   No. 01-MC026, 2001 WL 1661473 (W.D. Mich. 2001) ..................................................... 20

26

27

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
   218 F.R.D. 423 (D. Del. 2003) .......................................................................................... 20

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

*Mount Hope Church v. Bash Back!*,
   705 F.3d 418 (9th Cir. 2012) ............................................................................................ 16

*Nat'l Serv. Indus., Inc. v. Vafla Corp.*,
   694 F.2d 246 (11th Cir. 1982) ............................................................................................. 9

*NML Capital, Ltd. v. Republic of Argentina*,
   C 12-80185 JSW (MEJ), 2013 WL 655211 (N.D. Cal. Feb. 21, 2013) ...................... 3, 14, 15

*NML Capital Ltd. v. Republic of Argentina*,
   No. 2:14-cv-492-RFB-VCF, 2014 WL 3898021 (D. Nev. Aug. 11, 2014) .................... passim

*Nordotek Enviro. Inc. v. RDP Tech. Inc.*,
   No. MC410-24, 2010 WL 3070196 (S.D. Ga. Aug. 5, 2010) ............................................. 20

*Pham v. Wal-Mart Stores, Inc.*,
   2:11-cv-01148-KJD-GWF, 2012 WL 3730565 (D. Nev. Aug. 28, 2012) ........................... 15

*Platinum Air Charters, LLC v. Aviation Ventures, Inc.*,
   No. 2:05-cv-01451-RCJ-LRL, 2007 WL 121674 (D. Nev. Jan. 10, 2007) ......................... 16

*Price Waterhouse LLP v. First Am. Corp.*,
   182 F.R.D. 56 (S.D.N.Y. 1998) ......................................................................................... 20

*Regents of Univ. of California v. Kohne*,
   166 F.R.D. 463 (S.D. Cal. 1996) ....................................................................................... 20

*Relational, LLC v. Hodges*,
   627 F.3d 668 (7th Cir. 2010) ............................................................................................. 20

*Republic of Argentina v. NML Capital, Ltd.*,
   134 S. Ct. 2250 (2014) ........................................................................................................ 9

*Robinson v. Goldfield Merger Mines Co.*,
   206 P. 399 (Nev. 1922), *aff'd on re-hearing*, 213 P. 103 (Nev. 1923) ............................. 13

*Rock Bay, LLC v. Dist. Ct.*,
   129 Nev. Adv. Op. ............................................................................................................. 11

*Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*,
   No. C. 06-3219 JW (RS), 2009 WL 5114077 (N.D. Cal. Dec. 18, 2009) ............................ 3

*S.E.C. v. Banc de Binary*,
   Case No. 2:13-cv-00993-RCJ-VCF, 2014 WL 1030862 (D. Nev. Mar. 14, 2014) .............. 19

*Shelton v. Am. Motor Corp.*,
   805 F.2d 1323 (8th Cir. 1986) ........................................................................................... 19

*State v. Cantsee*,
   130 Nev. Adv. Op. ............................................................................................................. 11

016887\0001\11621913.1                                          iii

*Strick Corp. v. Thai Teak Prod. Co., Ltd.*,
   493 F. Supp. 1210 (E.D. Pa. 1980) ...................................................................... 11

*Tr. of N. Florida Operating Eng'g Health & Welfare Fund v. Lane Crane Serv., Inc.*,
   148 F.R.D. 662 (M.D. Fla. 1993) ........................................................................ 11

*U-Haul Co. of Nevada, Inc. v. Gregory J. Kamer, Ltd.*,
   No. 2:12-cv-00231-KJD-CWH, 2013 WL 5278523 (D. Nev. Sept. 17, 2013) ...................... 8

*VFS Fin., Inc. v. Specialty Fin. Corp.*,
   No. 3:09-cv-00266-RCJ-VPC, 2013 WL 1413024 (D. Nev. Apr. 4, 2013) ..................... 9, 10

*Wells Fargo Bank, N.A. v. Iny*,
   No. 2:13-cv-01561-MMD, 2014 WL 1391055 (D. Nev. Apr. 9, 2014) ................................ 8

*Wultz v. Bank of China Ltd.*,
   298 F.R.D. 91 (S.D.N.Y. 2014) ................................................................... 18, 19

**STATUTES**

Argentine Criminal Code ............................................................................. 13

**OTHER AUTHORITIES**

8A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure:
   Civil 3d § 3014 ................................................................................. 9, 11

Federal Rules of Civil Procedure 1 ................................................................ 18

Federal Rule of Civil Procedure 30(b)(6) .................................................... 17, 18

Federal Rule of Civil Procedure 45 ................................................................ 20

Federal Rule of Civil Procedure 69(a)(2) ..................................................... passim

Local Rule 26-7(b) .............................................................................. 8, 9

"Insight: in syrian sanctions, some gains but much uncertainty", REUTERS, Nov. 2, 2012 ........... 7

"Shells and Shelves", THE ECONOMIST, APR. 7, 2012 .................................................. 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**PRELIMINARY STATEMENT**

Plaintiff NML Capital, Ltd. ("**NML**") holds judgments against the Republic of Argentina ("**Argentina**") totaling more than $1.7 billion.  To avoid its payment obligations, Argentina has engaged in elaborate mechanisms to shield its assets from creditors.  *EM Ltd. v. Republic of Argentina*, 720 F. Supp. 2d 273, 279-80 (S.D.N.Y. 2010), *vacated on other grounds*, 652 F.3d 172 (2d Cir. 2011).  Argentina's bad faith towards its creditors and disrespect for the authority of the United States courts has left NML with little choice but to track Argentina's assets around the world and attempt to execute on them as local laws permit.  *Id.*

To be sure, many of NML's post-judgment enforcement and discovery efforts have not been run-of-the-mill.  But that is purely the consequence of Argentina's extraneous behavior. Recognizing this fact, the federal district judge in Manhattan who has presided over Argentina's debt default litigation for the last 12 years has endorsed NML's broad and sometimes unconventional discovery initiatives as fully consistent with Federal Rule of Civil Procedure 69(a)(2) in which governs post-judgment discovery.  In the words of that Court, "plaintiffs in these actions should be allowed some liberality in exploring means of enforcing their judgments … [a]nd I do not intend to take a narrow view when it comes to dealing with attempts to enforce the judgments."[1]  The information sought through the Subpoena easily meets that standard.  Val de Loire's motion should thus be denied, and it should be compelled to comply fully with the Subpoena.

In this matter, NML served the Subpoena on Val de Loire, a Nevada LLC, by service upon Val de Loire's registered agent, M.F. Corporate Services (Nevada) Limited ("**MF Nevada**").[2]  As explained in the "Background Information" in Attachment A of the Subpoena, NML targeted Val de Loire due to its connections to two Argentine nationals—Cristobal López ("**López**") and Lázaro Baéz ("**Baéz**")—who are confidantes of Argentine President Cristina Fernández de Kirchner and her late husband Néstor Kirchner.

---

[1]     Transcript of *EM Ltd. & NML Capital Ltd. v. Republic of Argentina*, Feb. 2, 2007 (a copy of which his attached as Exhibit A).

[2]     Subpoena to Val de Loire LLC, Aug. 27, 2014 (a copy of which is attached as Exhibit B).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1   NML has reason to believe that both López and Baéz may have misappropriated and

2   embezzled tens of millions (if not more) of Argentine state funds in part, through shell companies

3   like Val de Loire.   López and Baéz have both been the subject of multiple criminal and

4   journalistic investigations within Argentina examining indications that they unlawfully exploited

5   their close relationship with the Kirchners, the President and former President of Argentina, to

6   enrich themselves.   If convicted, any funds traceable to such behavior could become the property

7   of Argentina and therefore potentially available to satisfy NML's judgments against Argentina.

8   Val de Loire is a shell corporation established under Nevada law that is affiliated with

9   López and his gaming interests—interests that he owes the Kirchner regime.   Val de Loire and

10   López appear to be linked to both Baéz and to an array of shell companies established for Baéz's

11   benefit—123 of which are Nevada companies that have already been the subject of discovery (the

12   "**Baéz Entities**").   In discovery proceedings earlier this year, this Court held that NML had valid

13   grounds for subpoenaing the Baéz Entities due to the suggestion of those entities' ties to the

14   alleged embezzlement scheme.   *NML Capital Ltd. v. Republic of Argentina*, No. 2:14-cv-492-

15   RFB-VCF, 2014 WL 3898021, at *4-8 (D. Nev. Aug. 11, 2014) ("***NML Capital***").

16   Having learned of Val de Loire's connections to López, Baéz, the Kirchners, their

17   associates, and the Baéz entities, NML subpoenaed Val de Loire for documents concerning those

18   entities.   The Subpoena does not, as Val de Loire suggests, seek every Val de Loire document that

19   relates to "every individual or entity whose name pops up on a Google search for 'Argentina' and

20   'Kirchner.'"   Mot. at 7.   Instead, the Subpoena asks for information relating to just 18 individuals

21   (López, Baéz, the Kirchners, and a handful of their family members and business associates) and

22   6 companies (all connected to López or Baéz).   *See* Ex. B at 14-15.    For those persons and

23   entities, the Subpoena seeks discrete types of information—principally information about funds

24   transfers, business operations, and assets. *Id.* at 10-11.

25   Val de Loire's Motion grossly mischaracterizes both the law and the facts.   Val de Loire

26   fails to even to ***mention***—much less distinguish—Magistrate Judge Ferenbach's Order or the

27   numerous cases on which Magistrate Judge Ferenbach rightly relied in determining that NML

28   was entitled to discovery from third-party shell companies in very similar circumstances.   Instead,

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1  Val de Loire rehashes the same erroneous arguments this Court has already rejected.  Val de

2  Loire relies upon a single case—a two-page California magistrate judge discovery order—that

3  arose in the context of discovery from a third-party concerning the assets and activities a

4  sovereign instrumentality.  Val de Loire misconstrues that order and suggests that it held that

5  Rule 69 imposes a stringent standard for discovery sought from third-parties (which is not the

6  law), when in fact the California magistrate judge denied the requested discovery only to the

7  extent NML sought information about the assets of presumptively separate instrumentalities of

8  Argentina without first showing that those instrumentalities were alter egos of Argentina.  What

9  Val de Loire leaves out is that the same Court interpreting the same subpoena ruled that NML is

10  entitled to broad discovery of potential assets of Argentina itself—and that order was

11  subsequently affirmed by the District Court Judge Jeffrey S. White.[3]  The order Val de Loire

12  misleadingly cites is inapposite to the Subpoena at issue here, in which NML seeks to trace the

13  fruits of criminal activity that, if such activity results in a conviction, would revert directly to

14  Argentina—not any Argentine instrumentality.

15  Val de Loire also mischaracterizes the facts.  Val de Loire protests that NML has not

16  established a direct relationship between it and the judgment debtor Argentina, but it largely

17  ignores NML's fundamental contention:  that it is investigating the assets, transactions, and

18  structure of Val de Loire and its connections to López, Baéz, and other shell companies

19  established to facilitate the potential misappropriation and embezzlement of Argentine state

20  funds.

21  Val de Loire accuses NML of engaging in a "grand fishing expedition," but the law is

22  clear that while "Rule 69 discovery can indeed resemble the proverbial fishing expedition, . . . a

23  judgment creditor is **entitled** to fish for assets of the judgment debtor."  *Ryan Inv. Corp. v.*

24  *Pedregal de Cabo San Lucas*, No. C. 06-3219 JW (RS), 2009 WL 5114077, at *4 (N.D. Cal. Dec.

25  18, 2009) (internal quotation and omitted) (emphasis retained).  No doubt Val de Loire (and the

26

27  [3]    Order *NML Capital Ltd. v. Republic of Argentina*, No. C 12-80185 JSW (MEJ) (Dkt. 9) (a copy of which is attached as Exhibit C); Order, *NML Capital Ltd. v. Republic of Argentina*, No. C 12-80185 JSW (MEJ) (Dkt. 24) (a copy of which is attached as Exhibit D).

28

people behind it) have their own reasons for wishing that NML not fish through its structure, assets, and transactions related to the alleged embezzlement network.  But the desire to keep secrets does not immunize Val de Loire from the broad, permissive post-judgment discovery allowed under Rule 69.  If Val de Loire has no documents that relate to any such embezzlement, then complying with the Subpoena will do it no harm.  Indeed, even though compliance with the Subpoena would not be unduly burdensome for Val de Loire, NML is willing to resolve any conceivable burden by paying Val de Loire's reasonable costs of producing responsive documents.

NML has no interest in wasting its time or resources with discovery aimed at persons or entities with no suspected connection to Argentina or its assets.  NML only pursues discovery when, as here, it has a reasonable belief that the information sought may assist in its post-judgment discovery efforts.  The information sought through the Subpoena easily meets that standard.  Val de Loire's motion should thus be denied, and it should be compelled to comply fully with the Subpoena.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### I.     The Alleged Embezzlement Scheme.

Val de Loire is part of a web of shell companies associated with a suspected scheme to embezzle misappropriated Argentine state assets.  Val de Loire's ties to Cristobal López, Lázaro Baéz, and the Baéz Entities all suggest Val de Loire's involvement in the scheme and indicate that Val de Loire may possess information that could help NML further develop its understanding of where the funds in question are currently located.

### A.     Cristobal López

Cristobal López is an Argentine national who has amassed a controversial fortune in the gambling and hydrocarbon industries, among others, during the Presidencies of Néstor and Cristina Kirchner.  López has been the subject of multiple criminal and journalistic investigations within Argentina since Néstor Kirchner became President of Argentina in 2003.  Virtually all of these investigations involve allegations that he improperly benefitted from his relationship with

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

former Argentine President Néstor Kirchner to enrich himself at the expense of the Argentine state.[4]  The accusations center on López's improper and potentially illegal acquisition of lucrative hydrocarbon and gambling concessions.[5]  López appears to hold many of his assets through his Nevada shell corporation, Centenary International Corp.[6]

More recently, Argentine Judge Rodolfo Canicoba Corrál opened a formal investigation into two of López's casino operations for defrauding the government, colluding with public officials to violate the requirements of their positions, and tax evasion.[7]  Judge Canicoba Corrál assigned prosecutor Guillermo Marijuan, who also worked with Argentine prosecutor José María Campagnoli on an intensive investigation into alleged misappropriation of state funds and embezzlement activity by Lázaro Baéz.[8]

**B.    Lázaro Baéz**

In the *NML Capital* proceedings before this Court, NML has already shown the connections between Lázaro Baéz, the 123 Nevada shell companies (*i.e.*, the Baéz Entities), and the widely reported embezzlement of Argentine assets.  *See generally NML Capital*, 2014 WL 3898012, at *1-2.  As summarized in *NML Capital*:

> [I]n April 2013, the Argentine government initiated an investigation, dubbed La Ruta Del Dinero K (*i.e.,* "the K Money Trail"), into Argentina's former president, Néstor Kirchner, his wife, current Argentine President Cristina Fernández de Kirchner, their confident Lázaro Baéz, and the trios' sordid financial affairs.  All

---

[4]    *See* Criminal Complaint against Nestor Kirchner (a translated copy of which is attached as Exhibit E); Amended Criminal Complaint with Proposal of Evidence (a translated copy of which is attached as Exhibit F); Amended Criminal Complaint against Nestor Kirchner (a translated copy of which is attached as Exhibit G).

[5]    *Id.*

[6]    Centenary International Corporation SEC Form 10-K (a copy of which is attached as Exhibit H).

[7]    "Courts Launch Investigation of Cristóbal López Slot Machines", LA NACIÓN, May 6, 2014 (a translated copy of which his attached as Exhibit I); "Complaint Filed Against Board of Directors of Lotéria Naciónal for Lack of Controls", LA NACIÓN, Apr. 7, 2014 (a translated copy of which his attached as Exhibit J ).   Val de Loire's parent company, Correon SA, is a spinoff of one of the companies now under investigation and appears to have extensive and continuing commercial dealings with it.  *See* Amended Criminal Complaint with Proposal of Evidence against Nestor Kirchner (a translated copy of which is attached as Exhibit F); Official Gazette of the Argentine Republic (a translated copy of which is attached as Exhibit K ).

[8]    "Judicial Green Light to Investigate Cristóbal López's Slot Machines", EL CRONISTA  COMERCIAL, May 6, 2013 (a translated copy of which his attached as Exhibit L ).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

three allegedly embezzled millions of pesos from public-infrastructure projects and laundered the proceeds and other embezzled funds through Panama and various international shell corporations.  The investigation's lead prosecutor, José María Compagnoli, authored a report stating that Baéz laundered $65 million through 150 Nevada corporations.  The report also states that all 150 Nevada corporations have the same director, Aldyne, Ltd., a Seychellois corporation.  After submitting the report to Argentina's National Supreme Court of Justice, the Kirchner government retaliated and removed Compagnoli from office.

*Id.* at *1.[9]  NML possesses documents that connect the Baéz Entities to Aldyne and the Seychellois entities and that indicate the involvement of other entities:  MF Nevada, Gairns Ltd., and Mossack & Fonseca.  *Id.* at *2.[10]  These Documents indicate that Baéz Entities have received capital transfers totaling millions of dollars—most of which came from a mysterious entities in the Seychelles.  *Id.*

## C.   Val de Loire's Connections To López, Baéz, And The Baéz Entities

Through discovery obtained from the Baéz Entities' registered agent, MF Nevada, NML has learned of an apparent connection between Val de Loire, López, Baéz, and the Baéz Entities.  Val de Loire is a holding company that is named in a 2010 supplemental criminal complaint filed in Argentina against Néstor Kirchner.[11]  According to the complaint, Val de Loire is a 35% owner of Correon SA; an entity that partners with López's company Casino Club SA in gambling projects that have been tainted by widespread allegations of political corruption.[12]  Correon SA is also identified in SEC filings as an investor-partner of the López-controlled vehicle Casino Club S.A.[13]

---

[9]    Campagnoli Report (a translated copy of which is attached as Exhibit M); Campagnoli Dictamen (a translated copy of which is attached as Exhibit N).

[10]    Operating Agreements of Agrocomtra USA LLC, Best World Supplies Ltd, Cosmetech LLC, Dolfin Trading LLC, Mercury Consultants LLC, Thunder Overseas Trading LLC, and Steel Product Services LLC (copies of which are attached as Exhibit O).

[11]    Amended Criminal Complaint with Proposal of Evidence against Nestor Kirchner (a translated copy of which is attached as Exhibit F).

[12]    *Id.*

[13]    Pinnacle Entertainment, Inc. SEC Form 8-K (a copy of which is attached as Exhibit P).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Documents produced to NML in response to its August 23, 2013 subpoena to MF Nevada have linked Val de Loire to transactions with two of the Baéz Entities; Fintech Holdings and Balmont Holdings.[14]  MF Nevada, the Baéz Entities' registered agent for service of process, also serves as the registered agent for Val de Loire.  Further, the Panamanian law firm Mossack Fonseca & Co. appears to represent either Val de Loire itself or the individuals and entities behind it. [15]  To cite just one example from the MF Nevada production, MF Nevada produced a letter from MF Nevada's Patricia Amunategui to the Uruguayan law firm of Juan Pedro Damiani, which appears to have represented the beneficial owner of the Baéz Entity Balmont Holdings.[16]  In the letter, Amunategui refers to a number of enclosed documents and describes one of the enclosures as:  "Originals of the mutual contracts with the assignment of collateral signed by Mr. Edmund Ward, one of which carries the corresponding certificate of the resident agent and the apostil, and by *Val de Loire*."[17]  Thus, the document indicates that one of the firms in the Baéz

---

[14]     *See* Excerpt from Production Balmont Holdings Ltd. (a copy of which is attached as Exhibit Q); Excerpt from Production of Fintech Holdings LLC (a copy of which is attached as Exhibit R).

[15]     The relationship between MF Nevada and Mossack Fonseca & Co. was explored in length at the September 11, 2014 deposition of Patricia Amunateugi in connection with NML's pursuit of discovery from the Baez Entities. Based on the deposition, NML has learned that: ███████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████ *See* Transcript of Deposition of Patricia Amunategui, Sept. 11, 2014 (a copy of which will be filed under seal as Exhibit S).  It is not at all surprising that Mossack & Fonseca is well known for its money laundering activities. "Shells and Shelves", THE ECONOMIST, Apr. 7, 2012 (a copy of which his attached as Exhibit T); "Insight: In Syrian Sanctions, Some Gains but Much Uncertainty", REUTERS, Nov. 2, 2012 (a copy of which is attached as Exhibit U). ████████████████████████████████ *See* Exhibit S at 109:4 – 112:3.

[16]     The Damiani firm is well-known for its involvement in Argentine money laundering schemes.  *See* "A Uruguayan Law Firm Played a Key Role in the Route of the K Money", CLARÍN, July 27, 2014 (a translated copy of which is attached as Exhibit V).

[17]     The contracts in question were not included in MF Nevada's production to NML; nor was there any indication of what collateral was assigned, so the exact relationship between Val de Loire and Balmont Holdings

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

network suspected of money laundering (Balmont Holdings) had business dealings with Val de Loire.

## II.    The Subpoena And Val de Loire's Refusal To Meet And Confer In Good Faith.

On August 27, 2014, NML served the Subpoena on Val de Loire through its registered agent, MF Nevada.  The Subpoena includes sixteen reasonably focused requests.  The Subpoena asks Val de Loire for information relating specifically to 18 individuals (López, Baéz, the Kirchners, and a handful of their family members and business associates) and 6 companies (all connected to López or Baéz).  Ex. B (Subpoena at 14-15).  For those persons and entities, the Subpoena seeks discrete types of information:  principally, information about funds transfers, business operations and assets.  *Id.* at 10-11.

On September 24, 2014, through the same counsel who represents the Baéz Entities, Val de Loire moved to quash.  It did so without making any effort at all to meet and confer in good faith with NML, as required by Local Rule 26-7(b).  When NML raised that concern after receiving the Motion, Val de Loire agreed to a belated meet and confer with NML on October 1, 2014.  In that discussion, however, Val de Loire's counsel refused to withdraw the Motion pending further discussions, declined to engage in any substantive discussion of the context of the Subpoena or the authority on which NML relies, and was unwilling to consider any *compromise* to avoid burdening this Court.

## ARGUMENT[18]

Federal Rule of Civil Procedure 69(a)(2) authorizes a judgment creditor to serve broad discovery in aid of execution—including discovery about the judgment debtor's assets located outside of the jurisdiction of the court where the subpoena is served or the judgment is rendered.

---

remains unknown.

[18]    Despite the requirement under Local Rule 26-7(b), counsel for Val de Loire failed to meet and confer with NML prior to filing the Motion.  The Court could deny Val de Loire's Motion on that basis alone.  *See Wells Fargo Bank, N.A. v. Iny*, No. 2:13-cv-01561-MMD, 2014 WL 1391055, at *2 (D. Nev. Apr. 9, 2014) (denying non-party's motion to quash because the "pending motions suffer from a threshold defect in that they do not contain a proper meet and confer certification."); *see also U-Haul Co. of Nevada, Inc. v. Gregory J. Kamer, Ltd.*, No. 2:12-cv-00231-KJD-CWH, 2013 WL 5278523, at *3 (D. Nev. Sept. 17, 2013) (denying moving party's discovery motion because they "did not satisfy the meet and confer requirements prior to filing this motion.").

1   NML has been awarded judgments against Argentina for over $1.7 billion, and NML has a right

2   to any information that may help it trace funds that may have been embezzled from Argentina by

3   López, Baéz, or other Kirchner associates utilizing the Baéz Entities or Val de Loire itself.

4
5   **I.      NML Is Entitled To Discover Information That May
            Lead To Misappropriated Assets Embezzled From Argentina
            And Subject To Execution In Satisfaction Of NML's
6           Judgments, Val de Loire's Motion Should Be Denied.**

7
8   **A.      This Court Has Broad Discretion Under Rule 69(a)(2)
                To Permit Third-Party Discovery That May Reveal The
                Identity and Location Of Potentially Attachable Assets.**

9

10  Rule 69(a)(2) of the Federal Rules of Civil Procedure governs discovery in proceedings

11  involving the enforcement of a judgment. Under that rule, a judgment creditor is entitled to

12  obtain discovery from "any person" relating to the judgment debtor's assets "wherever located,"

13  including "outside the jurisdiction of the court where the discovery request is made." *EM Ltd.*,

14  695 F.3d at 207-08 (internal citation omitted); *see also NML Capital Ltd. v. Republic of*

15  *Argentina*, No. 2:14-cv-492-RFB-VCF, 2014 WL 3898021, at *3 (D. Nev. Aug. 11, 2014)

16  ("**NML Capital**"). Rule 69(a)(2) entitles a judgment creditor "to identify assets that can be used

17  to satisfy a judgment" and "to discover concealed or fraudulently transferred assets." *VFS Fin.,*

18  *Inc. v. Specialty Fin. Corp.*, No. 3:09-cv-00266-RCJ-VPC, 2013 WL 1413024, at *3 (D. Nev.

19  Apr. 4, 2013 (internal citations omitted); *see also Nat'l Serv. Indus., Inc. v. Vafla Corp.*, 694 F.2d

20  246, 250 (11th Cir. 1982) ("judgment creditor is entitled to discover the identity and location of

21  any of the judgment debtor's assets, wherever located."). As a result, discovery under Rule 69 is

22  "quite permissive." *NML Capital*, 2014 WL 3898012, at *4 (citing *Republic of Argentina v. NML*

23  *Capital, Ltd.,* 134 S. Ct. 2250, 2254 (2014)); 8A Charles A. Wright & Arthur R. Miller, Federal

24  Practice and Procedure: Civil 3d § 3014, p. 160-62 ("The scope of examination is very broad, as

25  it must be if the procedure is to be of any value.").

26  The liberal standard for post-judgment discovery applies with equal force to discovery

27  sought from third-parties. Rule 69(a)(2) expressly permits discovery from "any person," and

28  thus, "[a] judgment creditor may obtain discovery from both parties and non-parties alike." *VFS*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

*Fin., Inc.*, 2013 WL 1413024, at *4 (quoting *Henry v. Rizzolo*, No. 2:08-cv-00635-PMP-GWF 2012 WL 13725, at *3 (D. Nev. Jan. 4, 2012)); *see also NML Capital*, 2014 WL 3898012, at *4; *EM Ltd.*, 695 F.3d at 207 ("It is not uncommon to seek asset discovery from third parties . . . that possess information pertaining to the judgment debtor's assets.") (citation omitted).  A subpoena "reaches all responsive materials within the corporation's control, even if those materials are located outside" the court's jurisdiction.  *NML Capital*, 2014 WL 3898012, at *4 (quoting *Eitzen Bulk A/S v. Bank of India*, 827 F. Supp. 234, 238-39 (S.D.N.Y. 2011)).

Applying these rules, courts in Nevada and elsewhere commonly allow judgment creditors to conduct "very broad" discovery of "information from parties and non-parties alike—including information about assets upon which execution can issue or about assets that have been fraudulently transferred."  *Henry*, 2012 WL 13725, at *3; *see also 1st Tech., LLC v. Rational Enter. LTDA*, 2:06-cv-01110-RLH-GWF, 2007 WL 5596692, at *4 (D. Nev. Nov. 13, 2007) (post-judgment discovery has "broad scope").  Judge Griesa of the Southern District of New York, before whom the litigation between NML and Argentina has been pending for over twelve years, has ruled repeatedly that NML is entitled under the Federal Rules to broad discovery in aid of its judgment enforcement efforts.[19]

### B.   Post-judgment Discovery Is Warranted As Long As The Judgment Creditor Can Make A Threshold Showing That Connects The Third-Party With Discoverable Information.

Under Rule 69, a judgment creditor can follow either of "two paths for propounding discovery on third-parties:  federal law or the state law in which the district court sits."  *NML Capital*, 2014 WL 3898012, at *4.  "In both cases, the judgment creditor must make a threshold showing connecting the third party with discoverable information before propounding discovery on the third party."  *Id.*

To do so "[u]nder federal common law, the judgment creditor must show either (1) 'the necessity and relevance of [the] discovery sought' or (2) that 'the relationship between the

---

[19]   Transcript of *EM Ltd. & NML Capital Ltd. v. Republic of Argentina*, Feb. 2, 2007 (a copy of which his attached as Exhibit A)  ("[P]laintiffs in these actions should be allowed some liberality in exploring means of enforcing their judgments.").

judgment debtor and the nonparty is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets.'" *Id.* (quoting Wright & Miller, *supra*, p. 162 (citing *Tr. of N. Florida Operating Eng'g Health & Welfare Fund v. Lane Crane Serv., Inc.*, 148 F.R.D. 662, 664 (M.D. Fla. 1993); *Strick Corp. v. Thai Teak Prod. Co., Ltd.*, 493 F. Supp. 1210, 1218 (E.D. Pa. 1980)).

"Under Nevada law, the judgment creditor must show that 'the relationship between the judgment debtor and nonparty raises reasonable suspicion as to the good faith of asset transfers between the two.'" *Id.* (quoting *Rock Bay, LLC v. Dist. Ct.*, 129 Nev. Adv. Op. 21, 298 P.3d 441, 443 (2013)). "Reasonable suspicion exists 'if there are specific, articulable facts' in support of the inference that the asset transfers were not made in good faith." *Id.* (quoting *State v. Cantsee*, 130 Nev. Adv. Op. 24, 321 P.3d 888, 893 (2014)).

As this Court explained in an August 11, 2014 Opinion resolving a related discovery dispute: "[i]f the judgment creditor satisfies either standard, Rule 69 opens the doors of discovery and permits the judgment creditor to use any discovery device afforded by the Federal Rules." *Id.*

### C. NML Seeks Information That Is Relevant To Its Ongoing Post-Judgment Execution Efforts.

NML is entitled to discovery because it has made a threshold showing that connects Val de Loire to a web of shell companies associated with a suspected scheme to embezzle Argentine assets—assets that NML could potentially attach in satisfaction of its judgments. NML meets that threshold under either federal common law (showing the relevance of asset transfers involving Val de Loire) or Nevada law (asserting "specific, articulable facts" supporting the inference of how Val de Loire has information concerning the embezzlement scheme).

#### 1. Suspected embezzlement of Argentine property by Cristobal López.

As detailed above, *see supra* at Part I, and in the "Background Information" to the Subpoena, NML has reason to believe that an illicit relationship among López and the Kirchners may have allowed López to misappropriate millions of dollars in Argentine state assets—assets that are now hidden around the world. Numerous Argentine criminal and journalistic investigations have targeted López's activities and his allegedly improper benefits from his

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

relationship with the Kirchners since Néstor Kirchner became Argentina's president in 2003. Accusations have centered on López's improper and potentially illegal acquisition of lucrative hydrocarbon and gambling concessions. For example, Argentine judge Rodolfo Canicoba Corral recently opened a formal investigation into two of López's casino operations for defrauding the government, tax evasion, and colluding with public officials to violate the requirements of their positions.

### 2.    Val de Loire is a shell company affiliated with López.

Val de Loire is a holding company that owns 35% of Correon SA, which partners with a López-owned company, Casino Club SA, in gambling projects that have been tainted by widespread allegations of political corruption. U.S. Securities and Exchange Commission records identify Correon SA as an investor-partner of the López-controlled vehicle Casino Club SA.[20]

### 3.    Val de Loire and López are both linked to Lázaro Baéz.

Baéz is currently under investigation by Argentine prosecutors for embezzling over $65 million of state funds out of Argentina through companies in Nevada and elsewhere. In the Baéz proceedings, this Court has already held that NML had valid grounds for subpoenaing Nevada entities concerning the Baéz Entities.

In response to a subpoena served by NML last year, MF Nevada (the registered agent for both Val de Loire and the Baéz Entities) produced documents that reveal that the López-linked Val de Loire at least periodically does business with some of the Baéz Entities.[21] Further, documents produced by MF Nevada suggest that the Panamanian law firm Mossack Fonseca & Co. represents either Val de Loire or the individuals and entities behind it. Mossack Fonseca is known for incorporating shell companies. *NML Capital*, 2014 WL 3898021, at *2.[22]

---

[20]    *See* Pinnacle Entertainment, Inc. SEC Form 8-K (a copy of which is attached as Exhibit P).

[21]    *See* Excerpt from Production Balmont Holdings Ltd. (a translated copy of which is attached as Exhibit Q); Excerpt from Production of Fintech Holdings LLC (a translated copy of which is attached as Exhibit R).

[22]    As this Court discussed, there are ample facts that suggest that Mossack & Fonseca controls the 123 Báez Entities, and those same connections suggest its control of Val de Loire. Most obviously, MF Nevada (an affiliate of

BROWNSTEIN HYATT FARBER SCHRECK, LLP

100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1
2

4.      NML is Entitled to Discovery to Investigate Any Property That May
Have Been Embezzled by López, Baéz, or shell entities like Val de Loire.

3
4
5
6
7
8
9
10
11
12
13

If the investigations into embezzlement by López and Baéz result in convictions, any funds traceable to the crime may become Argentina's property under both Nevada and Argentine law. *See Robinson v. Goldfield Merger Mines Co.*, 206 P. 399, 401 (Nev. 1922) ("a thief acquires no title to the property which he steals"), *aff'd on re-hearing*, 213 P. 103 (Nev. 1923); *see also Alamo Rent-A-Car, Inc. v. Mendenhall*, 937 P.2d 69, 73-74 (Nev. 1997); Argentine Criminal Code, Art. 23, Art. 303[23]; *see also NML Capital*, 2014 WL 3898021, at *5. NML therefore has a right to seek discovery to find information that helps trace those assets. It has done so by issuing a Subpoena asking Val de Loire for its documents (whether few or many) that relate to 18 individuals (López, Baéz, the Kirchners, and a handful of their family members and business associates) and 6 companies (all connected to López or Baéz).

14
15
16
17
18
19
20
21
22

Just as in *NML Capital*, in which this Court found that NML had met the requisite threshold showing with respect to the Baéz Entities (*see id.*), NML has shown here: (1) that López's alleged money laundering activities involved a Nevada shell company (in this case, Val de Loire); (2) that the shell company at issue concededly has no offices, businesses, or personnel in Nevada (*see* Sept. 25, 2014 Decl. of Edmund Ward for Use in Support of Nonparty Val de Loire, LLC's Mot. to Quash Subpoena or, in the Alternative, for Protective Order); and (3) that MF Nevada and Val de Loire are shell companies controlled by Mossack & Fonseca, which is based in Panama, where Argentine investigators have alleged that Baéz hid embezzled funds (*see id.* at *13 n.12).[24] This Court also noted that "there is no doubt that shell corporations are

23
24
25

Mossack & Fonseca, *see* Mossack & Fonseca Co., Nevada Website Printout (a copy of which is attached as Exhibit W), is the registered agent for Val de Loire—just as it is for the Báez Entities. *NML Capital*, 2014 WL 3898021, at *5. MF Nevada is apparently Mossack & Fonseca's Nevada-based independent contractor. *Id.* However, it is evident that the ███████████████████████ *See* Exhibit S.

26

[23]     Argentine Criminal Code, Art. 23 (a translated copy of which is attached as Exhibit X).

27
28

[24]     This Court also noted that the Báez Entities had the same managers who shared an office in Seychelles. *Id.* at *5. NML only had that information because in the Báez proceedings, MF Nevada produced some documents responsive to the subpoena served upon it. NML now seeks the same type of information, which would further NML's investigation, would help complete NML's factual understanding of the embezzlement scheme and the

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

routinely formed to commit fraud." *Id.* at *11 (citing *Illinois Bell Tel. Co., Inc. v. Global NAPs Illinois, Inc.*, 551 F.3d 587, 598 (7th Cir. 2008)).  Based on such a showing, this Court held that NML had satisfied its threshold showing under Nevada law. *Id.* at *5.[25]

Notably, Val de Loire has not claimed that it has no responsive documents.  Although Val de Loire argues that there is no connection between it and Argentina directly, Val de Loire never denies that it possesses documents concerning the 18 persons and 6 entities associated with López, Baéz, the Kirchners, and the Baéz Entities.  Val de Loire's non-denial suggests that it ***does*** have possession, custody, or control of such documents.[26]

### D.     Val de Loire Argues For a Strict Standard For Third-Party Discovery That Is Not Contemplated By The Federal Rules of Civil Procedure.

Tellingly, Val de Loire does not even attempt to distinguish *NML Capital*.  Instead, Val de Loire chooses to entirely ignore Magistrate Judge Ferenbach's thoughtful order—despite its obvious relationship to the Subpoena at issue here.[27]

Rather than addressing *NML Capital* and the numerous cases upon which it relied, Val de Loire relies entirely on a two-page magistrate judge discovery order from a different jurisdiction—a decision that arose in the context of discovery served concerning the assets and activities a sovereign instrumentality that the magistrate judge there determined warranted a heightened threshold for discovery.  *See NML Capital, Ltd. v. Republic of Argentina*, C 12-80185 JSW (MEJ), 2013 WL 655211, at *1-2 (N.D. Cal. Feb. 21, 2013) (the "***California Magistrate Order***").[28]  In that case, NML sought to compel Chevron to produce documents relating to a

---

companies used to further it, and in turn might to lead to the discovery of attachable assets.

[25]     *NML Capital* did not address whether NML had met the threshold showing under federal common law.  *Id.*

[26]     *See Pham v. Wal-Mart Stores, Inc.*, 2:11-cv-01148-KJD-GWF, 2012 WL 3730565, at *2 (D. Nev. Aug. 28, 2012) ("Documents that are in the actual possession of a third person are deemed to be in the responding party's control if [the responding party] has the legal right to obtain them.") (citations omitted) (insertion in original).

[27]     Val de Loire's failure to mention Magistrate Judge Ferenbach's order is an omission of choice—not of mere oversight—because counsel for Val de Loire was also counsel for the objecting Baez Entities who appeared before Magistrate Judge Ferenbach.

[28]     Val de Loire fails to mention that the California Magistrate Order is on appeal to the District Court for the Northern District of California.  Regardless, even in the unlikely event that the opinion is upheld on appeal, the California Magistrate Order does not apply outside of the context of discovery served concerning a sovereign instrumentality, and it certainly does not bind this Court.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1   sovereign instrumentality of Argentina.  *Id.* at *1.  The magistrate judge held not only that NML

2   had to make a "threshold showing" that those entities were alter egos of Argentina, but also that

3   NML had to "overcome the presumption" that a foreign state instrumentality is independent from

4   the state.  *Id.* at *2 (citing *First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*, 462

5   U.S. 611, 627 (1983) ("*Bancec*")).  The California Magistrate Order did ***not*** hold, as Val de Loire

6   misrepresents (*see* Motion at 4-5), that NML had failed to make a showing that the

7   instrumentality and Argentina were related.  Rather, it held that NML had not "overcome the

8   presumption that [the instrumentality] is a separate juridicial entity for purposes of asset

9   discovery."  2013 WL 655211, at *2.

10       While the California Magistrate Order denied discovery based on NML's failure to

11   "overcome the presumption" that a foreign state instrumentality is independent from the State, it

12   *granted* NML's other discovery requests.  In granting NML's post-judgment discovery seeking

13   information concerning Chevron's dealings with Argentina, the Court noted that "[i]t is not

14   uncommon to seek asset discovery from third parties that possess information pertaining to the

15   judgment debtor's assets … [n]or is it unusual for the judgment creditor to seek disclosure related

16   to assets held outside the jurisdiction of the court where the discovery request is made."[29]

17   Therefore, "NML may properly seek disclosure from Chevron related to [Argentina's] assets."

18   *Id*. at 3.  District Court Judge Jeffrey S. White for the Northern District of California subsequently

19   affirmed the order permitting NML to obtain discovery from Chevron.[30]

20       In addition to misconstruing the California Magistrate Order and ignoring the applicable

21   law concerning judgment creditors' rights to broad post-judgment discovery, Val de Loire

22   selectively quotes and attacks NML's Subpoena and Background Information while failing to

23   mention the most critical aspect of NML's claims:  Val de Loire's connections to embezzled

24   Argentine funds.  The Motion criticizes NML's inability to demonstrate a direct connection

25   between Val de Loire and the Republic of Argentina (*see generally* Mot. at 5-13 (stressing that

---

26   [29]      Order at 2, *NML Capital Ltd. v. Republic of Argentina*, No. C 12-80185 JSW (MEJ) (Dkt. 9) (a copy of
         which is attached as Exhibit C).

27

28   [30]      Order at 2, *NML Capital Ltd. v. Republic of Argentina*, No. C 12-80185 JSW (MEJ) (Dkt. 24) (a copy of
         which is attached as Exhibit D).

"there is not a single request regarding the actual judgment debtor—Argentina.")), but Val de Loire either misunderstands or misconstrues NML's rationale for seeking discovery.  NML is not claiming that Argentina directly funds or transacts business with Val de Loire; NML contends— and cites evidence suggesting—that Val de Loire is one of numerous shell companies (in Nevada and elsewhere) linked to an embezzlement scheme designed to misappropriate *Argentine* state funds and shelter those assets around the world.   If Baéz or López is convicted of misappropriation of state funds, *Argentina's* property—not the property of any presumptively separate Argentine instrumentality, will be potentially subject to seizure by NML.  NML has made a threshold showing that Val de Loire is connected to this scheme, and it is entitled to explore whether Val de Loire has information that would further inform its enforcement efforts.

**E.    Producing Responsive Documents Would Not Impose Any Undue Burden On Val de Loire.**

NML is willing to pay Val de Loire's reasonable costs of complying with the Subpoena— and would have offered to do so if Val de Loire had been willing to meet and confer in good faith. That willingness resolves any conceivable burden on Val de Loire for producing documents to NML.

Even if that were not the case, NML's subpoena does not impose an undue burden on Val de Loire.  "The mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden."  *Platinum Air Charters, LLC v. Aviation Ventures, Inc.*, No. 2:05-cv-01451-RCJ-LRL, 2007 WL 121674, at *6 (D. Nev. Jan. 10, 2007); *see also NML Capital*, 2014 WL 3898021, at *6-7 (rejecting the Baéz Entities' argument that responding to NML's subpoenas would be unduly burdensome).  NML has a good faith basis to believe that Val de Loire is in possession of information that could lead to attachable assets in satisfaction of its judgments against Argentina.  This is sufficient to require Val de Loire to comply with the Subpoena.[31] *See Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012) ("[W]e

---

[31]        In addition, Val de Loire only makes generalized objections and does not specify exactly how complying with NML's subpoena would impose an undue burden.  *See Diamond State Ins. Co. v. Rebel Oil. Co., Inc.*, 157 F.R.D. 691, 694 (D. Nev. 1994) ("[G]eneralized and unsupported allegation of undue burden is not sufficient to prevent enforcement of the subpoenas.").

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

do not think that the mere need to respond to an opponent's advocacy in our civil justice system should be viewed as unduly burdensome when legal arguments are advanced in good faith.").

Finally, although Val de Loire complains that NML's requests are not limited to a particular time frame and in some instances cover an overly broad subject matter (*see* Motion at 15-16), Val de Loire has refused to suggest what it would view as a more reasonable scope for responsive documents. That is precisely the type of discussion that the parties could have had (if Val de Loire had been willing) during a meet and confer, and NML remains willing to discuss reasonable suggestions to narrow any remaining disputes with Val de Loire.

**F.      Any Concerns By Val de Loire Concerning The Need To Protect Privileged Or Confidential Information Can Be Addressed With An Appropriate Confidentiality Agreement And The Use Of A Privilege Log.**

NML is perfectly willing to enter an appropriate confidentially agreement to protect against the dissemination of Val de Loire's confidential information. *See* Mot. at 2. Again, that is precisely the type of concern that Val de Loire could have discussed in a meet and confer rather than raising it with this Court.

Any concerns Val de Loire may have about protecting privileged documents (*see* Motion at 2, 17) can of course be addressed by Val de Loire's production of an appropriate privilege log—a routine practice that, again, need not have been raised as part of a motion to quash.

**II.      This Court Has the Authority to Order Val de Loire to Identify and Designate Individuals Within the Court's Jurisdiction to Appear for a Deposition or Educate a Witness to Appear.**

Rule 30(b)(6) requires a subpoenaed entity to "produce one or more witnesses knowledgeable about the subject matter" in the subpoena. *Great Am. Ins. Co. of N.Y. v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 538 (D. Nev. 2008). The Federal Rules of Civil Procedure, however, do not require the witness to "have personal knowledge on the designated subject matter." *Id.* Instead, a subpoenaed entity has "a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter." *Id.* at 539 (internal

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

quotation marks omitted). "The fact that [the subpoenaed organization] may no longer employ a person with knowledge on the designated topics did not relieve it of the duty to prepare a properly educated Rule 30(b)(6) designee." *Great Am. Ins. Co. of N.Y.*, 251 F.R.D. at 541.

If no employee, representative, or agent of Val de Loire with knowledge of the matters contained in the deposition notice resides or regularly conducts business within a 100-mile radius of Las Vegas, then the Court has the power to compel Val de Loire under Rule 30(b)(6) to designate a representative within 100 miles of Las Vegas and to educate that person concerning the subjects set forth in the deposition notice.

This Court has already analyzed this precise issue and held that third-party shell companies established under Nevada law with a registered agent located in Nevada through which they can be served with process (like Val de Loire) can be ordered to sit for a deposition in Nevada. *NML Capital*, 2014 WL 3898021, at *11-12 (acting pursuant to its inherent power to enforce judgments under Rule 1 of the Federal Rules of Civil Procedure and ordering the Baéz Entities to produce a witness for a deposition despite having no persons within a 100-mile radius of the district court). Once again, Val de Loire fails to distinguish or to even ***mention*** Magistrate Judge Ferenbach's order.

Similarly, the United States District Court for the Southern District of New York recently addressed the requirement that a subpoenaed non-party must educate a witness to testify on its behalf at a deposition. In *Wultz v. Bank of China Ltd.*, 298 F.R.D. 91 (S.D.N.Y. 2014), a bank in Israel moved to quash a third-party subpoena seeking deposition testimony under Rule 30(b)(6), arguing that it employed no knowledgeable employees in the forum and that educating an in-forum employee was "simply not reasonable or practicable." *Id.* at 99. The court denied the bank's motion to quash, reasoning that "[e]ven if [the Israeli bank] is a non-party witness and all of the documents or knowledgeable persons are in Jerusalem, compliance with the 30(b)(6) subpoena is not an undue burden when weighed against" the parties' need for the testimony. *Id.* An in-forum representative could "easily be educated" by a person knowledgeable about the topics by "telephone, email or videoconference," and the bank could "avoid the burden of educating a[n] [in-forum] employee altogether by agreeing to a deposition by video." *Id.*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1   As in *NML Capital* and *Wultz*, this Court may require Val de Loire to designate a

2   representative to testify at a deposition concerning the subjects of the subpoena.  *Wultz*, 298

3   F.R.D. at 99.  If Val de Loire has no employees, representatives or other agents within the district

4   who are knowledgeable about the subjects of the subpoena, Val de Loire has a duty to educate a

5   representative to appear for a deposition.  *Id.*

6   Although Val de Loire (an entity organized under the laws of Nevada) claims that no

7   authorized representative resides, is employed, or regularly conducts business in person within

8   100 miles of Las Vegas (Ward Decl. ¶¶ 5-7), several individuals and entities affiliated with Val

9   de Loire may satisfy the geographic limitations for a deposition.  For example, MF Nevada is

10   located in Las Vegas and serves as the registered agent for Val de Loire.  In addition, Mossack

11   Fonseca & Co. markets its Nevada SPV-creation services on its corporate website, which

12   suggests that representatives from Mossack Fonseca may visit Nevada to conduct business on a

13   regular basis.  Moreover, counsel for Val de Loire may be an appropriate deponent, should no

14   other suitable representative exist.  *See Shelton v. Am. Motor Corp.*, 805 F.2d 1323 (8th Cir.

15   1986) (a court may order counsel to appear as a witness upon a showing of no other means to

16   obtain the requested information, and that the information is crucial to the requesting party's

17   case); *Couturier v. Am. Invsco Corp.*, No. 2:12-cv-01104-APG-NJK, 2013 WL 4499008, at *1

18   (D. Nev. Aug. 20, 2013) (same).

19   Regardless of whom Val de Loire chooses as its representative, requiring Val de Loire to

20   educate a witness within the Court's jurisdiction does not impose an undue burden.  It "is merely

21   the result of the concomitant obligation from the privilege of being able to use the

22   [organizational] form in order to conduct business."  *See Great Am. Ins. Co. of N.Y.*, 251 F.R.D.

23   at 540; *see also S.E.C. v. Banc de Binary*, Case No. 2:13-cv-00993-RCJ-VCF, 2014 WL

24   1030862, at *7 (D. Nev. Mar. 14, 2014) (stating that permitting a defendant to "benefit from its

25   status as a foreign corporation after it has exploited its appearance as an American company

26   would be fundamentally inequitable."); *Less v. Taber Instrument Corp.*, 53 F.R.D. 645, 646

27   (W.D.N.Y. 1971) ("[B]y doing business in a particular judicial district, a corporation submits

28   itself fully to the jurisdiction of the court of the district."); *Metro-Goldwyn-Mayer Studios, Inc. v.*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

*Grokster, Ltd.*, 218 F.R.D. 423, 424-25 (D. Del. 2003) (requiring an entity to bring a witness into the state to be deposed "is not an unreasonable requirement . . . given [the entity's] decision to establish corporate residency here.").

Finally, the cases that Val de Loire cites for the proposition that Rule 45 requires this Court to quash NML's subpoena are inapposite.  In those cases, either: (a) the subpoenaed non-party did not reside in the forum state; or (b) there was another jurisdiction within the United States where the subpoenaed person could comply.[32]   In contrast, Val de Loire—an entity incorporated under Nevada law—resides in Nevada.  *See NML Capital*, 2014 WL 3898012, at *10 (citing *Dexia Credit Local v. Rogan*, 629 F.3d 612, 620 (7th Cir. 2010)).

Consistent with the overwhelming authority and with the prior determination by Magistrate Judge Ferenbach, NML respectfully requests that the Court order Val de Loire to designate a representative to testify in response to NML's subpoena.

---

[32]     *See Relational, LLC v. Hodges*, 627 F.3d 668, 673 (7th Cir. 2010) (U.K. resident); *LT Int'l Ltd. v. Shuffle Master, Inc.*, 2:12-CV-1216-JAD-GWF, 2014 WL 3734270 (D. Nev. July 29, 2014) (non-resident Canadian corporation); *Nordotek Enviro. Inc. v. RDP Tech. Inc.*, No. MC410-24, 2010 WL 3070196 at *1 (S.D. Ga. Aug. 5, 2010) (Norwegian corporation that did no business in Georgia); *Matthias Jans & Associates, Ltd. v. Dropic*, No. 01-MC026, 2001 WL 1661473, at *1 (W.D. Mich. 2001) (non-party could comply with subpoena issued from Ohio in Michigan, where she resided); *Price Waterhouse LLP v. First Am. Corp.*, 182 F.R.D. 56 (S.D.N.Y. 1998) (non-resident British partnership); *Regents of Univ. of California v. Kohne*, 166 F.R.D. 463 (S.D. Cal. 1996) (non-party subpoenaed in California could comply with subpoena in Illinois).

1

**CONCLUSION**

2      For the foregoing reasons, NML respectfully requests that this Court deny Val de Loire's

3 Motion and grant NML's cross-motion to compel.

4      DATED this 9th day of October 2014.

5                                              BROWNSTEIN HYATT FARBER
                                               SCHRECK, LLP
6

7                                              By: */s/ Nikki L. Baker*
                                                   Kirk B. Lenhard, Esq.
8                                                  Nevada Bar No. 1437
                                                   Nikki L. Baker, Esq.
9                                                  Nevada Bar No. 6562
                                                   100 North City Parkway, Suite 1600
10                                                 Las Vegas, NV 89106-4614

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1  KIRK B. LENHARD, ESQ., Nevada Bar No. 1437
   klenhard@bhfs.com
2  NIKKI L. BAKER, ESQ., Nevada Bar No. 6562
   nbaker@bhfs.com
3  BROWNSTEIN HYATT FARBER SCHRECK, LLP
   100 North City Parkway
4  Suite 1600
   Las Vegas, NV 89106-4614
5  Telephone: 702.382.2101
   Facsimile: 702.382.8135
6
7  *Attorneys for NML Capital Ltd.*

8                **UNITED STATES DISTRICT COURT**

9                     **DISTRICT OF NEVADA**

10  NML CAPITAL LTD.,                    CASE NO.: 2:14-cv-01573-LDG-PAL

11            Plaintiff,                 **AFFIDAVIT OF NIKKI L. BAKER IN
                                         SUPPORT OF NML CAPITAL, LTD.'S**
12  v.                                   **MEMORANDUM IN RESPONSE TO
                                         NONPARTY VAL DE LOIRE LLC'S**
13  THE REPUBLIC OF ARGENTINA,           **MOTION TO QUASH SUBPOENA OR, IN
                                         THE ALTERNATIVE, FOR PROTECTIVE**
14            Defendant.                 **ORDER; AND IN SUPPORT OF NML'S
                                         CROSS MOTION TO COMPEL**
15

16

17

18  STATE OF NEVADA        )
                           ) ss.:
19  COUNTY OF CLARK        )

20        I, NIKKI L. BAKER, being first duly sworn, depose and state as follows:

21        1.    I am an attorney at the law firm of Brownstein Hyatt Farber Schreck, LLP, counsel

22  for Plaintiff NML Capital, Ltd. ("NML") in this matter currently pending before the United States

23  District Court, District of Nevada.  I submit this affidavit in support of NML's "Memorandum In

24  Response To Nonparty Val de Loire LLC's Motion To Quash Subpoena Or, In The Alternative,

25  For Protective Order; And In Support Of NML's Cross Motion To Compel" (the "Cross Motion").

26  I have personal knowledge of the facts set forth herein, and if called upon to do so, am competent

27  to testify thereto.

28                                        1

2. On August 28, 2014, NML served a Subpoena on M.F. Corporate Services (Nevada) Limited, who is/was designated by law to accept service of process on behalf of Val de Loire LLC ("Val de Loire").

3. On or about September 9, 2014, NML's counsel was contacted by Jason M. Wiley, Esq., who stated that his firm may be representing Val de Loire concerning the Subpoena served by NML. Mr. Wiley requested, on behalf of Val de Loire, additional time to respond to the Subpoena.

4. On September 15, 2014, I, along with other counsel for NML, spoke with Mr. Wiley about a different subpoena NML was proposing to serve on another client of Mr. Wiley. At the end of the call, Mr. Wiley was asked whether his firm had been formally retained by Val de Loire and, if so, whether he could confer about the Subpoena served on Val de Loire. Mr. Wiley stated that his firm was still waiting for the engagement letter to be signed by Val de Loire and, thus, any discussion about the Subpoena to Val de Loire was premature. Counsel for NML requested that Mr. Wiley let NML know if and when Mr. Wiley's law firm was formally engaged, so that counsel could meet and confer on the Subpoena to Val de Loire.

5. Counsel for NML did not receive any further communications about the Subpoena to Val de Loire from Mr. Wiley until Val de Loire filed the pending motion to quash, or in the alternative, for a protective order (Doc. 1) ("Motion to Quash").

6. On September 29, 2014, I called Mr. Wiley to inquire about why he did not contact me or other counsel for NML about the Subpoena to Val de Loire prior to filing the Motion to Quash. During the telephone call, I also pointed out to Mr. Wiley that he did not attach to the Motion to Quash a declaration or affidavit attesting to any meet and confer. I asked Mr. Wiley whether he would be willing to set up a call to discuss the Subpoena to Val de Loire. He agreed.

7. On October 1, 2014, I participated in a telephonic meet and confer with Mr. Wiley, and other counsel for NML. During that call, Mr. Wiley, on behalf of Val de Loire, refused to withdraw the Motion to Quash pending further discussions, declined to engage in any substantive

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1    discussion of the context of the Subpoena or the authority on which NML relies, and was

2    unwilling to consider any compromise to avoid seeking this Court's intervention.

3           8.     Pursuant to Local Rule 26-7, after personal consultations with Val de Loire's

4    counsel and sincere efforts to do so, NML has been unable to resolve this matter without Court

5    intervention.

6           FURTHER AFFIANT SAYETH NAUGHT.

7           DATED this 9th day of October, 2014.

8

9                                  By:

10                                       NIKKI L. BAKER

11    Subscribed and sworn to before me

12    on the 9th day of October, 2014.

13

14    NOTARY PUBLIC

15    My commission expires: March 14, 2018

16

17

18

19

20

21

22

23

24

25

26

27

28                                       3



ERIN L. PARCELLS
Notary Public State of Nevada
No. 06-104446-1
My appt. exp. Mar. 14, 2018

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1   KIRK B. LENHARD, ESQ., Nevada Bar No. 1437
klenhard@bhfs.com

2   NIKKI L. BAKER, ESQ., Nevada Bar No. 6562
nbaker@bhfs.com

3   BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600

4   Las Vegas, NV  89106-4614
Telephone:  702.382.2101

5   Facsimile:   702.382.8135

6   DENNIS H. HRANITZKY, ESQ.
dennis.hranitzky@dechert.com

7   DECHERT LLP
1095 Avenue of the Americas

8   New York, NY  10036-6797
Telephone:  212.698.3500

9   Facsimile:   212.698.3599

10   *Attorneys for Plaintiff NML Capital Ltd.*

11

12   **UNITED STATES DISTRICT COURT**

13   **DISTRICT OF NEVADA**

14   NML CAPITAL LTD.,       CASE NO.:  2:14-cv-01573-LDG-PAL

15           Plaintiff,

16   v.                 **CERTIFICATE OF SERVICE**

17   THE REPUBLIC OF ARGENTINA,

18           Defendant.

19

20       Pursuant to Fed.R.Civ.P.5(b), and Section IV of District of Nevada Electronic Filing

21   Procedures, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK,

22   LLP, and that on the 9th day of October, 2014, I caused a true and correct copy of **NML**

23   **CAPITAL, LTD.'S MEMORANDUM IN RESPONSE TO NONPARTY VAL DE LOIRE**

24   **LLC'S MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR**

25   ///

26   ///

27   ///

28

*(left margin, vertical)* BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**PROTECTIVE ORDER; AND IN SUPPORT OF NML'S CROSS MOTION TO COMPEL**

was served via electronic service to all electronic registered CM/ECF users in this matter.


 /s/ Karen Mandall
an employee of Brownstein Hyatt Farber Schreck, LLP

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101