## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
***

| | |
|---|---|
| NML CAPITAL, LTD.,<br><br>                    Plaintiff,<br><br>vs.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                    Defendant. | Case No. 2:14–cv–492–RFB–VCF<br><br>**ORDER** |
| NML CAPITAL, LTD.,<br><br>                    Plaintiff,<br><br>vs.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                    Defendant. | Case No. 2:14–cv–1573–RFB–VCF<br><br>**ORDER** |

These matters involve NML Capital, Ltd.'s post-judgment execution proceeding against the Republic of Argentina. Eleven motions are before the court: (1) Non-Party M.F. Corporate Services' Motion to Quash (#14[1]); (2) Non-Party Val de Loire's Motion to Quash (#1); (3) NML Capital's Counter Motion to Compels (#10, #60);[2] (4) five Motions to Seal (#21, #22, #28, #64, #65); Jorge Lanata and the Center for Investigative Journalism's Motion to Intervene (#67); and (5) the 123 Báez Entities' Emergency Motion to Exclude (#70).

---

[1] Parenthetical citations refer to the court's docket.

[2] "A separate document must be filed for each type of document or purpose. Examples: separate documents must be filed for response and motion rather than a response and counter motion in one document." Special Order 109(III)(F)(4).

1

## BACKGROUND

In 2001, the Republic of Argentina underwent a depression and sovereign-default crisis. The majority of Argentina's bondholders voluntarily restructured their investments and suffered a 70% loss. However, one bondholder refused: NML Capital Ltd. ("NML"). Beginning in 2003, NML commenced eleven collection actions against Argentina in the Southern District of New York. NML argued that its debt—which totals $1.7 billion—should be repaid in full. The court agreed. *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 203 n.1 (2d Cir. 2012) *aff'd  Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2251 (2014).

To date, Argentina has failed to satisfy NML's judgments.[3] This has caused NML to travel the globe in search of property owned by Argentina, which NML may attach to execute its judgments. *See NML Capital, Ltd. v. Republic of Argentina*, No. 03–cv–8845–TPG, 2011, WL 3897828, at *1 (S.D.N.Y. Sept. 2, 2011) (affirmances omitted). This search brought NML to Las Vegas, Nevada. Here, NML has served a number of subpoenas on third-party shell corporations. The purpose: to locate billions of Argentine pesos that were allegedly embezzled from the state and laundered by various Argentine politicians and their confidants.

In addition to experiencing a depression and sovereign-default crisis, Argentina has been plagued by allegations of political corruption. Former President Néstor Kirchner and his wife, current President Cristina Fernández de Kirchner, allegedly awarded lucrative state-controlled projects to various political insiders. The business dealings of two Kirchner insiders are relevant here: Lázaro Báez and Cristobal

---

[3] *See, e.g.*, *NML Capital, Ltd. v. Banco Cent. de la Republica Argentina*, 652 F.3d 172, 196 (2d Cir. 2011) (recalling Argentina's appalling record of keeping its promises to its creditors); *EM Ltd. v. The Republic of Argentina*, 720 F. Supp. 2d 273, 279 (S.D.N.Y. 2010) ("In all the years of litigation, the Republic has shown not the slightest recognition of this obligation to pay. And it is clear beyond any question that the Republic, as it went on from the crisis of 2001, has at times had resources at its command to pay the judgments, or at least to make substantial part-payments. But the Republic thus far pays nothing on these judgments.").

López. In August of 2014, NML demonstrated reasonable suspicion to believe that Báez laundered embezzled state funds through Nevada. *See NML Capital Ltd. v. Republic of Argentina*, No. 2:14-cv-492-RFB-VCF, 2014 WL 3898021 (D. Nev. Aug. 11, 2014). NML has now expanded its search to include López.

Several discovery disputes are pending in connection with NML's investigations into Báez and López (*See*, *e.g*., Mots. #1, #10, #14, #21, #22, #28, #60, #64, #65, #70). Some of the documents related to these disputes were filed under seal pursuant to a stipulated protective order. (*See* Doc. #38). Jorge Lanata—the Argentine journalist who first reported on the Kirchners' dealings with Báez—and the Center for Investigative Journalism in the Americas has moved to intervene and unseal court records pursuant to the public's common law right of access to judicial records. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978).

On December 12, 2014, the court held a hearing. Three general topics were addressed: (1) whether an evidentiary hearing is needed to resolve the ten pending discovery motions; (2) whether the court should consolidate NML's related post-judgment execution proceedings; and (3) whether the court should grant Lanata and the Center for Investigative Journalism's motion to intervene and unseal. Because the court defers ruling on the ten discovery motions until after the court's March 9, 2015 hearing, and because the parties agreed to file a stipulation to consolidate, the court now turns to the one remaining issue: Lanata and the Center for Investigative Journalism's motion to intervene and unseal.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 24 governs permissive intervention. It has two general requirements. First, under Rule 24(b)(2), the intervenor must demonstrate a legal basis for intervention. The rule states, "[o]n timely motion, the court may permit anyone to intervene who is given a conditional right to intervene by a federal statute or has a claim or defense that shares with the main action a common

question of law or fact." FED. R. CIV. P. 24(b)(2) (colons and alphanumerals omitted). Second, under Rule 24(c), the intervenor must satisfy certain pleading requirements: (1) service of the motion to intervene under Rule 5 and (2) "[t]he motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." FED. R. CIV. P. 24(c).

Generally, courts are prohibited from modifying requirements, like these, which are enshrined in the Federal Rules of Civil Procedure. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 167–68 (1993); *In re GlenFed, Inc. Sec. Litig*., 42 F.3d 1541, 1546 (9th Cir. 1994) (en banc), *superseded on other grounds by Sec. Exch. Comm'n v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011) ("We are not permitted to add new requirements to Rule 9(b) simply because we like the effects of doing so. This is a job for Congress, or for the various legislative, judicial, and advisory bodies involved in the process of amending the Federal Rules.").

Federal common law provides an exception here. Permissive intervention is permitted where, as here, a member of the public seeks intervention to modify a protective order and inspect court documents. *Beckman Indus., Inc. v. Int'l Ins. Co*., 966 F.2d 470, 472–73 (9th Cir. 1992); *E.E.O.C. v. Nat'l Children's Ctr., Inc*., 146 F.3d 1042, 1045 (D.C. Cir. 1998) (collecting cases and stated that "despite the lack of a clear fit with the literal terms of Rule 24(b), every circuit court that has considered the question has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders.").

This exception is rooted in the common law right of access to judicial records. *See San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1100 (9th Cir. 1999) (citations omitted). The public's right to access judicial records is "a precious common law right, one that predates the Constitution." *Nixon v. Warner Commc'ns, Inc*., 435 U.S. 589, 612 (1978) (Marshall, J., dissenting) (citation omitted). Enforcement of this right does not require a propriety interest in any document or

record. *Id*. at 597. The interest to enforce the right derives from our republican system of limited government: it is rooted "in the citizen's desire to keep a watchful eye on the workings of public agencies" and in the media's desire to "publish information concerning the operation of government." *Id*. at 598 (citations omitted).[4] Indeed, the right is so strong that it abrogates Rule 24(b)'s textual requirements.[5] *See, e.g.*, *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 784 (1st Cir. 1988) (citing *Ex Parte Uppercu*, 239 U.S. 435, 441 (1915) (stating, before the federal rules were adopted, that third-party assertion of right of access to discovery materials "requires no particular formality")).

When a member of the public seeks intervention to modify a protective order and inspect court documents, the request is governed only by the court's discretionary considerations under Rules 24 and 26. Both rules involve a similar, two-step inquiry. First, when "exercising its discretion" under Rule 24(b)(3), "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Here, the starting point is "a strong presumption in favor of access." *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995). Similarly, under Rule 26, the court must consider whether disclosure will cause "annoyance, embarrassment, oppression, or undue burden or

---

[4] *See also* JAMES MADISON, THE FEDERALIST NO. 51 ("If angels were to govern men, neither external nor internal controls on government would be necessary. In framing a government which is to be administered by men over men, the great difficulty lies in this: you must first enable the government to control the governed; and in the next place oblige it to control itself."); *Globe Newspaper Co. v. Superior Court for Norfolk Cnty.*, 457 U.S. 596, 606 (1982) ("[T]he right of access to [records in] trials plays a particularly significant role in the functioning of the judicial process and the government as a whole. Public scrutiny . . . enhances the quality and safeguards the integrity of the fact finding process, with benefits to both the defendant and to society as a whole.").

[5] The Ninth Circuit has indicated that two requirements must be met in place of Rule 24(b)'s textual requirements: (1) a timely motion to intervene and (2) a question of law or fact in common with the main action. *Beckman Indus.*, 966 F.2d at 473; *San Jose Mercury News, Inc.*, 187 F.3d at 1100. However, the common law right of access permits the public to intervene years after judgment is entered. *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013); *Olympic Refining Co. v. Carter*, 332 F.2d 260 (9th Cir.), *cert. denied*, 379 U.S. 900 (1964). And, a common question of law or fact is demonstrated by merely invoking one's right of access and filing a motion to intervene or motion to unseal. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994); *see also Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002) (citing *Nixon*, 435 U.S. at 597) ("Not only can the public generally gain access to unprotected information produced during discovery, but it also has a federal common law right of access to all information filed with the court.").

expense." FED. R. CIV. P. 26(c). Here, the starting point is the "broad right of discovery" and presumption that a litigant is entitled to "every man's evidence." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (citation omitted).

Second, the court must consider whether these presumptions have been rebutted. Under Rule 24, the presumption in favor of access may only be overcome only on the basis of articulable facts known to the court, not on the basis of unsupported hypothesis or conjecture. *Hagestad*, 49 F.3d at 1434 (citation omitted). Similarly, under Rule 26, the presumption in favor of disclosure may only be overcome with articulable facts: "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman, Indus*., 966 F.2d at 476.

If, after conducting these inquiries, the court determines that intervention and disclosure are appropriate, then the courts records must "be distributed to the public pursuant to its presumptive right of access. Case closed." *Phillips ex rel. Estates of Byrd*, 307 F.3d at 1214. If, however, the court permits intervention under Rule 24 but determines that the intervenor failed to demonstrate a basis for disclosure under Rule 26, then the intervenor must provide "sufficiently compelling reasons why the sealed discovery information should be released." *See id*.

## DISCUSSION

Jorge Lanata and the Center for Investigative Journalism in the America's ("collectively Lanata") motion presents two question: (1) whether, under Rule 24, Lanata is entitled to intervene to access to the court's records and (2) whether, under Rule 26, the court should modify its protective orders and permit its records to be distributed to the public. Both are addressed below.

## I.   Rule 24 Analysis: Whether Lanata is Entitled to Intervene

The first question the parties' papers present is whether Lanata is entitled to intervene under Rule 24(b). Where, as here, judicial records are sealed, a member of the public is presumptively entitled to

intervene because sealing orders place the public's interest in open access in controversy. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1176 (9th Cir. 2006); *Jessup v. Luther*, 227 F.3d 993, 998 (7th Cir. 2000); (*see also*, *supra*, n. 3). To rebut the "strong presumption" in favor of access, the opposing party must proffer "articulable facts" that demonstrate that "the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3); *Hagestad*, 49 F.3d at 1434.

Here, M.F. Corporate Services and Ms. Amunategui—the only persons opposing Lanata's motion[6]—failed to rebut this presumption for five reasons. First, Lanata motion is not untimely. (*See* M.F. Nev. Opp'n (#69) at 11:23). When a member of the public moves to intervene to unseal judicial records, the motion to intervene is timely as long as the documents remain under seal because sealing places the public's interest in open access in controversy. *See Kamakana*, 447 F.3d at 1176; *Jessup*, 227 F.3d at 998. Indeed, in *Blum*, the Ninth Circuit departed from a stringent-timeliness requirement and adopted "the growing consensus among the courts of appeals that intervention to challenge confidentiality orders may take place long after a case has been terminated." *Blum*, 712 F.3d at 1353 (citations omitted).

---

[6] Although NML filed a limited opposition to Lanata's Motion to Intervene, NML does not oppose permitting Lanata to intervene for the limited purpose of litigating the sealing Ms. Amunategui's deposition. (NML's Opp'n (#72) at 6:10–11) ("NML has consistently maintained the position that it does not have a 'dog in the fight' as to whether the Transcript or other documents remain sealed or are revealed to the public."). Rather, NML opposes Lanata's motion insofar as it may be constructed a motion for intervention of right, *see* FED. R. CIV. P. 24(a), rather than a motion for permissive intervention, *see* FED. R. CIV. P. 24(b). NML is concerned that Lanata may seek documents not filed with the court. (NML's Opp'n (#72) at 2:3–6, 5:1–2, 6:5–6) ("Lanata seems to be arguing that he is entitled to become a party to this action and, therefore, should be provided with 'all court records and evidence in support of those documents', including discovery not filed with the Court . . . Lanata has not cited any authority supporting a finding that he should be provided with access to the discovery materials not filed with the Court. [. . . ] Additionally, NML notes that it strongly opposes any request that Lanata be provided with access to materials not filed with this Court.").

NML should rest assured. It is well settled that when, as here, a member of the public seeks intervention to unseal pursuant to the public's right of access, the motion to intervene is treated as a motion for permissive joinder. *Beckman Indus*, 966 F.2d at 472–73; (*see supra* pp. 3–6). It is similarly well settled that the public right of access to judicial records only extends to judicial records: "[c]ertainly the public has no right to demand access to discovery materials which are solely in the hands of private party litigants." *Public Citizen v. Ligget Group, Inc*., 858 F.2d 775, 780 (1st Cir. 1988).

Accordingly, M.F. Corporate Services' argument that Lanata's motion is untimely because it was filed "at the eleventh hour, less than one week before" the court's hearing, *see* (M.F. Nev. Opp'n (#69) at 11:23–28), fails as a matter of law. *See F.T.C. v. AMG Servs., Inc*., No. 2:12–cv–536–GMN–VCF, 2014 WL 6069821, at *4 (D. Nev. Nov. 13, 2014).

Second, M.F. Corporate Services and Ms. Amunategui failed to proffer "articulable facts" demonstrating that Lanata's "intervention will . . . prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3); *Hagestad*, 49 F.3d at 1434. M.F. Corporate Services and Ms. Amunategui argue that Lanata's motion to intervene should be denied because intervention "will inevitably invite delay," which will prejudice M.F. Corporate Services and Ms. Amunategui. (M.F. Nev. Opp'n (#69) at 12:5–14). Neither M.F. Corporate Services nor Amunategui are parties to NML's action against Argentina. Therefore, any delay that affects M.F. Corporate Services and Ms. Amunategui is not cognizable under Rule 24(b)(3).

Additionally, in the context of the pending motions, delay alone is not prejudicial to any party or nonparty. The court's decision to continue the hearing on the motions to quash and motion to compel is necessary for the court's management of its docket. The court will decide each motion in the order that best serves the interests of justice, as mandated by Rule 1. The court's power to manage and control its docket in this fashion is one of the court's inherent powers. *See Landis v. N. Am. Co*., 299 U.S. 248, 254–55 (1936); *Atchison, Topeka & Santa Fe Ry. v. Hercules, Inc*., 146 F.3d 1071, 1074 (9th Cir. 1998).

Third, M.F. Corporate Services and Ms. Amunategui's argument that "the media has no actual, vested interest in the deposition transcript" fails as a matter of law. (M.F. Nev. Opp'n (#69) at 12:15–21). The deposition transcript is one of the sealed documents that is in controversy in the pending motions to seal. Even if the sealing of the deposition transcript were not in controversy, the public has a common law right of access to judicial records. *See generally Nixon*, 435 U.S. 589 (1978). This right was immediately

8

triggered when NML, M.F. Corporate Services, and Ms. Amunategui filed portions of the deposition transcript with court.

Fourth, M.F. Corporate Services and Ms. Amunategui argue that Lanata's motion to intervene should be denied because continued sealing "will [not] impede [Lanata] from" proceeding with its investigation into the Kirchners' dealings with Báez. (M.F. Nev. Opp'n (#69) at 12:22–28). This argument is misplaced. The court is not concerned whether Lanata will be able to continue his investigation into the Kirchners' dealings with Báez. The issue here is the public's right "to keep a watchful eye on the workings" this court. *Nixon*, 435 U.S. at 598.

Fifth, the court is unpersuaded that Lanata "cannot be trusted to use judiciously the confidential information contained" in the court's docket. (M.F. Nev. Opp'n (#69) at 13:7–8). The court is concerned about Ms. Amunategui's personal privacy and sensitive to the unwanted scrutiny that her involvement in this action may have caused her. Imputing bad faith and attacking Lanata's trustworthiness, however, will not ensure that Ms. Amunategui's right to privacy is protected. *See Beckman, Indus.*, 966 F.2d at 476 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning."). Ms. Amunategui's right to privacy, which may be protected under Rules 5.2 and 26(c), does not preclude the public's right to access judicial records under Rule 24. The rules demonstrate that both rights may coexist without infringing upon the other.

Therefore, the court grants Lanata's motion for permissive intervention. However, the court denies the motion with respect to the Center for Investigative Journalism in the Americas. The Center for Investigative Journalism in the Americas' presence would be redundant and duplicative of Lanata's interests. *See Perry v. Schwarzenegger*, 630 F.3d 898, 906 (9th Cir. 2011) (per curiam).

## II.   <u>Rule 26 Analysis: Whether the Court's Protective Orders should be Modified</u>

The parties' papers present a second question: whether the court should modify its protective orders to permit Lanata to access sealed judicial records. This involves a two-part analysis. First, the court must to engage in a "good cause" inquiry under Rule 26(c). *Phillips ex rel. Estates of Byrd*, 307 F.3d at 1212, 1214. If, after conducting a good cause analysis, the court lifts the protective order, then the information must be disclosed and the court's inquiry ends. *Id*. If, however, the court does not lift the protective order, then the court must consider whether the common law right of access—which is "a separate and independent basis" from Rule 26—permits Lanata to publically release the records. *Id*. at 1212. To do so, Lanata must "provide sufficiently compelling reasons why the sealed . . . information should be released." *Id*. at 1214.

The court finds that this inquiry is not ripe for decision. Counsel for Lanata has not had access to the records in controversy and, therefore, lacks an adequate factual basis to challenge the court's protective orders by providing reasons why the sealed information should be released to the public. *See Phillips ex rel. Estates of Byrd*, 307 F.3d at 1212, 1214. Under *Kamakana*, both the court and the party requesting protection must articulate "specific factual findings" before sealing judicial records from the public. *Kamakana*, 447 F.3d 1178–79 (citations omitted). In order for Lanata to challenge M.F. Corporate Services' factual findings it must first have access to the facts (i.e., the sealed records). When Lanata filed its Motion to Intervene, it did not have access to the sealed records because its Motion to Intervene had not been granted.

Additionally, Lanata's motion is unripe for decision because Lanata has not had an opportunity to meet and confer with the relevant parties and nonparties. Where, as here, a person seeks to modify a protective order or compel disclosure, the movant must "include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute

without court action." FED. R. CIV. P. 26(c)(1); *see also* FED. R. CIV. P. 37(a)(1) (stating the exact same). In the District of Nevada, Local Rule 26-7 supplements these rules. It states that "[d]iscovery motions will not be considered unless a statement of the movant is attached thereto certifying that, after personal consultation and sincere effort to do so, the parties have been unable to resolve the matter." The meet-and-confer requirement contains two prongs: (1) the movant must submit a certification that "accurately and specifically conveys" the substance of the consultation and (2) the court must be satisfied that the movant actually made a personal consultation and sincere effort to do so. *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166 (D. Nev. 1996).

Finally, the court makes three brief remarks on Lanata's current status in this action. First, Lanata moved to intervene and unseal in order to "allow the public and the media access to [] necessary and important evidence in this case." (Lanata's Mot. (#67) at 15:4–5). As discussed above, however, Rule 24(b) only permits Lanata to access information filed with the court. (*See supra* n. 5) (citing *Ligget Group, Inc.*, 858 F.2d at 780 ("Certainly the public has no right to demand access to discovery materials which are solely in the hands of private party litigants.").

Second, the court denies Lanata's request to unseal as unripe. The court will enter an order on the pending motions to seal and Lanata's request to unseal after Lanata's counsel has had an opportunity to review the sealed documents and litigate the propriety of sealing the documents. As a result, the court orders that the sealed documents are for attorneys' eyes only at this time. Only Mr. Randazza and Ms. Haar, Lanata's attorneys admitted to practice in this court, may view the sealed documents. Mr. Randazza and Ms. Haar must comply with the court's existing protective orders and must not distribute the sealed documents or their contents to their client, any other person or entity, or to the public, until the court rules on the motions to seal or the parties reach a stipulation.

Third, as discussed during the hearing, Lanata's counsel is only permitted to access records that have been filed with the court as of the date of this order. If documents are filed under seal in the future, Lanata must meet and confer with the party requesting sealing and, if an agreement cannot be reached, petition the court for attorneys' eyes only access to these documents so that a motion to unseal individual records can be filed.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Jorge Lanata and the Center for Investigative Journalism in the America's Motion to Intervene (#67) is GRANTED in part and DENIED in part. Jorge Lanata is permitted to intervene for the purposes stated in this order.

IT IS FURTHER ORDERED that Jorge Lanata's counsel must COMPLY with the court's existing protective orders and must not distribute the sealed documents or their contents to their client, any other person or entity, or to the public.

IT IS FURTHER ORDERED that only Counsel admitted to practice in this action[7] for Jorge Lanata and NO OTHER PERSON OR ENTITY whether or not acting on or behalf of, or affiliated with, Jorge Lanata may view the court's sealed filings in this matter, pending further order of the court.

IT IS FURTHER ORDERED that Jorge Lanata must FILE a Sealed Motion to Unseal by January 16, 2015, after complying with Local Rule 26-7(b). The motion will be briefed in the ordinary course. See LR 7-2(b)–(c). If the parties reach a stipulation regarding the sealed documents, they must file the stipulation in lieu of Lanata's Sealed Motion to Unseal by January 16, 2015.

IT IS FURTHER ORDERED that the parties must MEET & CONFER regarding the 123 Báez Entities' Emergency Motion to Exclude (#70).

---

[7] This is currently limited to Marc J. Randazza and his associate Theresa M. Haar.

IT IS FURTHER ORDERED that the parties and nonparties must file a STIPULATION regarding consolidation for Judge Boulware's consideration by December 19, 2014.

IT IS FURTHER ORDERED that a HEARING is set for Monday March 9, 2015 at 1:00 PM in Courtroom 3D. The court will hear oral argument on five motions: (1) Non-Party M.F. Corporate Services' Motion to Quash (#14); (2) Non-Party Val de Loire's Motion to Quash (#1); (3) NML Capital's Counter Motion to Compels (#10, #60); and (4) the 123 Báez Entities' Emergency Motion to Exclude (#70).[8]

DATED this 12th day of December, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

---

[8] The 123 Báez Entities' Emergency Motion to Exclude will only be addressed during the court's hearing if it is not resolved through the meet and confer process. If the dispute is resolved, the parties to the dispute are ordered to file a timely stipulation.